Dirk KNOWLTON, Diana Knowlton, Derrick Sell, Donna Sell; Paul Stone, Martha Stone, Kenneth Febbo, Andrea Febbo, and Evelyn Anderson, Appellants,

v.

UNITED STATES BRASS CORPORATION, Shell Oil Company d/b/a Shell Chemical Company, and Hoechst Celanese Corporation, Appellees.

Emery KOCHIE, Susan Kochie, Roger Allam, Kathy Marie Allam–Rogers, Robert H. Barnett, Donna Barnett, Michael Barry, Lucia Barry, Niraj Baxi, Bernadette Baxi, Steve Baxter, Karan Baxter, Thomas Beier, Dana Beier, David L. Blasi, Keith Brooks, Patricia Brooks, Richard A. Casas, Gail E. Casas, Carl Chandler, Kimberly Chandler, Clifford Chaney, Teresa Chaney, Andrea Chappa, Michael R. Cherry, Joni K. Cherry, Walter Clark, Ginger Clark, Anthony Damommio, Dorothy Damommio, William Daniel, Kathryn Daniel, Joe Davis, Merry Davis, Kenneth Davis, Jr., Susan Davis, Jimmy Dickinson, Barbara Dickinson, William Donzell, Cheryl Donzell, Mark Dugan, Sherry Dugan, Leroy Gant, Mae Gant, James Getto, Gwynn Getto, Clayton Gibbons, Ava Gibbons, William Gunderson, Jr., Tina Gunderson, Charlie Harrell, Jr., Mary Ann Harrell, Roger Hayes, Sandra Hayes, Bruce Hesse, Theresa Hesse, William Hill, Carolyn Hill, Carlos Hill, Trudy Hill, Randall Horton, Kim Horton, James Huckaby, Janice Huckaby, William Jonas, Linda Jonas, Richard Kamper, Gail Kamper, Blair Kilgallen, Rachel Kilgallen, Glenn Kondikoff, Janet Kondikoff, Scot Krewson, Kim Krewson, Scott

Cummings Lamb, Donna Lamb, James Ledford, Robin Lent, Dolly Lent, Viraj Lertsirisakron, Penpit Lertsirisakron, Patrick Manning, Janet Manning, Stirling Mays, Cynthia Mays, James McClure, Claudia McClure, James Means, Kristine Means, Erik Meintser, Michelle Meintser, Bennie Miles, Kim Miles, Troy Mitchell, Jr., Holly Mitchell, Robert Nail, Maria Nail, Charles Ortiz, Patricia Ortiz, Chris Partezana, Patricia Partezana, Jeanne Patton, David Rawls, Evelyn Rawls, Bruce Robbins, Nancy Robbins, Bret Robertson, Margaret Robertson, Terry Rogers, Carol Rogers, Ronald Sherwinski, Joellyn Sherwinski, David Smith, Jana Smith, William Smith, Linda Smith, Charles Smith, Janet Hull Smith, Benny Stafford, Elizabeth Stafford, Curtis M. Staggs, Ranada A. Staggs, Danny Strait, Carla Strait, Jack Tittle, Nancy Tittle, Robert Upton, Lavisa Upton, Don Vaughn, Julie Vaughn, John Watts, Susan Watts, Richard Williams, and Paula Williams, Appellants,

v.

UNITED STATES BRASS
CORPORATION,
Appellee.

UNITED STATES BRASS
CORPORATION,
Appellant,

v.

Emery KOCHIE, Susan Kochie, Roger Allam, Kathy Marie Allam–Rogers, Robert H. Barnett, Donna Barnett, Michael Barry, Lucia Barry, Niraj Baxi, Bernadette Baxi, Steve Baxter, Karan Baxter, Thomas Beier, Dana Beier, David L. Blasi, Keith Brooks, Patricia Brooks, Richard A. Casas, Gail E. Casas, Carl Chandler, Kimberly Chandler, Clifford Chaney, Teresa Chaney, Andrea Chappa, Michael R. Cherry, Joni K. Cherry, Walter Clark, Ginger Clark, Anthony Damommio, Dorothy Damommio, William Daniel, Kathryn Daniel, Joe Davis, Merry Davis, Kenneth Davis, Jr., Susan Davis, Jimmy Dickinson, Barbara Dickinson, William Donzell, Cheryl Donzell, Mark Dugan, Sherry Dugan, Leroy Gant, Mae Gant, James Getto, Gwynn Getto, Clayton Gibbons, Ava Gibbons, William Gunderson, Jr., Tina Gunderson, Charlie Harrell, Jr., Mary Ann Harrell, Roger Hayes, Sandra Hayes, Bruce Hesse, Theresa Hesse, William Hill, Carolyn Hill, Carlos Hill, Trudy Hill, Randall Horton, Kim Horton, James Huckaby, Janice Huckaby, William Jonas, Linda Jonas, Richard Kamper, Gail Kamper, Blair Kilgallen, Rachel Kilgallen, Glenn Kondikoff, Janet Kondikoff, Scot Krewson, Kim Krewson, Scott

Cummings Lamb, Donna Lamb, James Ledford, Robin Lent, Dolly Lent, Viraj Lertsirisakron, Penpit Lertsirisakron, Patrick Manning, Janet Manning, Stirling Mays, Cynthia Mays, James McClure, Claudia McClure, James Means, Kristine Means, Erik Meintser, Michelle Meintser, Bennie Miles, Kim Miles, Troy Mitchell, Jr., Holly Mitchell, Robert Nail, Maria Nail, Charles Ortiz, Patricia Ortiz, Chris Partezana, Patricia Partezana, Jeanne Patton, David Rawls, Evelyn Rawls, Bruce Robbins, Nancy Robbins, Bret Robertson, Margaret Robertson, Terry Rogers, Carol Rogers, Ronald Sherwinski, Joellyn Sherwinski, David Smith, Jana Smith, William Smith, Linda Smith, Charles Smith, Janet Hull Smith, Benny Stafford, Elizabeth Stafford, Curtis M. Staggs, Ranada A. Staggs, Danny Strait, Carla Strait, Jack Tittle, Nancy Tittle, Robert Upton, Lavisa Upton, Don Vaughn, Julie Vaughn, John Watts, Susan Watts, Richard Williams, and Paula Williams, Appellees.

Nos. 01–90–00612–CV, 01–90–00825–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 19, 1993.

Rehearing Denied Nov. 4, 1993.

George M. Fleming, P.C., George M. Fleming, Mark A. Hovenkamp, James R. Moriarty, Houston, for appellants.

Nelson & Bingham, Kurt T. Nelson, Loreta Huffard Rea, Susman Godfrey, Tracy K. Christopher, H. Lee Godfrey, Vinson & Elkins, Daniel A. Hyde, Mary Lou Strange, Houston, for appellees.

Before SAM BASS, COHEN and WILSON, JJ.

## OPINION

SAM BASS, Justice.*

In two separate appeals, the plaintiff homeowners [1] and United States Brass Corporation (U.S. Brass) appeal, respectively, from a summary judgment based on the affirmative defenses of res judicata and limitations, and a final judgment based on a jury verdict [2] entered by the court below.

The trial court entered a take-nothing summary judgment against the Knowlton plaintiffs in favor of the defendant companies, U.S. Brass, Shell Oil Company (Shell), and Hoechst Celanese Corporation (Celanese), which the Knowlton plaintiffs appeal. The trial court entered judgment on the jury verdict in favor of the Kochie plaintiffs against U.S. Brass, which U.S. Brass challenges. Additionally, the trial court did not award the Kochie plaintiffs double the first $1,000 of actual damages against U.S. Brass, which the Kochie plaintiffs assert as error under the Deceptive Trade Practices Act (DTPA).[3]

This suit began when numerous plaintiff homeowners sued U.S. Brass, General Homes Corporation (General Homes), Shell, Celanese, Buckner Boulevard Plumbing Co., Inc. (Buckner), and Vanguard Plastics, Inc. (Vanguard). The plaintiff homeowners alleged these entities were responsible for placing a defective "polybutylene plumbing system" in their homes through either the design, manufacture, marketing, or sale of the plumbing system. The plaintiff homeowners' complaint alleged theories of negligence, strict liability, and violations of the DTPA.

According to the plaintiff homeowners, U.S. Brass designed and manufactured the plumbing system, including the polybutylene pipe and Celcon insert fittings that are fas-

---

* The Honorable Sam Bass, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. They will be referred to collectively as the "plaintiffs" or the "Kochie plaintiffs" or the "Knowlton plaintiffs," as appropriate. As appropriate, the "Kochie plaintiffs" may also be referred to as the "DTPA plaintiffs" or the "negli-

gence plaintiffs," depending on the recovery they elected.

2. The jury returned favorable findings on issues of negligence and violation of the DTPA.

3. Tex.Bus. & Com.Code Ann. § 17.41 et seq. (Vernon 1987).

tened to the pipe by a crimp ring applied with a special crimp tool; Vanguard designed and manufactured a similar, competing polybutylene plumbing system that used either Celcon or Delrin (DuPont) insert fittings; Shell produced polybutylene as a by-product of the oil refining process; and Celanese produced the material, Celcon. The plumbing system of some of the plaintiff homeowners contained a mixture of Vanguard and U.S. Brass components. The plaintiff homeowners alleged that the plumbing system was defective, and that the defendants persuaded local code bodies to approve the plumbing system for new home construction, and builders, such as General Homes, to install the system in its homes based on the defendants' representations about the quality of the system and its component parts. Without such representations, the plaintiff homeowners stated General Homes would not have installed the plumbing system in its homes. The plaintiff homeowners purchased their homes either directly from General Homes, from individuals who had previously purchased their homes from General Homes, or as foreclosures.

After the trial court granted summary judgment in favor of Shell, Celanese, U.S. Brass, and General Homes against the Knowlton plaintiffs, the remaining plaintiff homeowners dismissed their claims against General Homes and Buckner, and nonsuited Shell and Celanese. Trial proceeded to a jury with U.S. Brass and Vanguard as the remaining defendants. The issues on liability for negligence and violations of the DTPA were submitted to the jury; the parties had previously stipulated the amount of actual damages. The plaintiff homeowners settled their claims with Vanguard after the court's charge had been read to the jury, closing arguments had been made, and the jury had been recessed with instructions to begin deliberating the next day.

The jury made findings favorable to 104 plaintiff homeowners and adverse to 12.[4] The 104 plaintiffs moved for judgment in accordance with the jury's verdict. Some elected to recover under the DTPA; the others elected to recover under negligence. The trial court signed a final judgment based on the jury findings and the plaintiffs' election of their theory of recovery. The trial court's judgment stated, "All other relief not expressly granted herein is denied."[5]

U.S. Brass limited its appeal to 69 plaintiffs, the Kochie plaintiffs, for whom the jury made favorable findings. Of these 69 plaintiffs, 48 elected to recover under the DTPA (the DTPA plaintiffs),[6] and 21 elected to recover under negligence (the negligence plaintiffs).[7]

4. The 12 plaintiffs, for whom the jury made unfavorable findings, have not appealed from the trial court's take-nothing judgment on their claims.

5. *See North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 898 (Tex.1966) (following a trial on the merits, a judgment that states, "all relief not expressly granted is denied," disposes of all the parties and all the issues made by the pleadings between the parties).

6. **The DTPA plaintiffs are: (1)** Roger Allam and Kathy Marie Allam–Rogers, **(2)** Robert and Donna Barnett, **(3)** Michael and Lucia Barry, **(4)** Niraj and Bernadette Baxi, **(5)** Steve and Karan Baxter, **(6)** Keith and Patricia Brooks, **(7)** Richard and Gail Casas, **(8)** Carl and Kimberly Chandler, **(9)** Andrea Chappa, **(10)** Walter and Ginger Clark, **(11)** William and Kathryn Daniel, **(12)** Joe and Merry Davis, **(13)** Kenneth and Susan Davis, **(14)** Jimmy and Barbara Dickinson, **(15)** William and Cheryl Donzell, **(16)** Mark and Sherry Dugan, **(17)** Leroy and Mae Gant, **(18)** James and Gwynn Getto, **(19)** Clayton and Ava Gibbons, **(20)** Willard and Tina Gunderson, **(21)** Charlie and Mary Harrell, **(22)** Bruce and Theresa Hesse, **(23)** Carlos and Trudy Hill, **(24)** Randall and Kim Horton, **(25)** James and Janice Huckaby, **(26)** William and Linda Jonas, **(27)** Blair and Rachel Kilgallen, **(28)** Emery and Susan Kochie, **(29)** Glenn and Janet Kondikoff, **(30)** Scott and Kim Krewson, **(31)** Robin and Dolly Lent, **(32)** Patrick and Janet Manning, **(33)** Stirling and Cynthia Mays, **(34)** James and Claudia McClure, **(35)** Bennie and Kim Miles, **(36)** Robert and Maria Nail, **(37)** Chris and Patricia Partezana, **(38)** Jeanne Patton, **(39)** Bruce and Nancy Robbins, **(40)** Ronald and Joellyn Sherwinski, **(41)** William and Linda Smith, **(42)** Charles and Janet Smith, **(43)** Benny and Elizabeth Stafford, **(44)** Curtis and Ranada Staggs, **(45)** Robert and Lavisa Upton, **(46)** Don and Julie Vaughn, **(47)** John and Susan Watts, and **(48)** Richard and Paula Williams.

7. **The negligence plaintiffs are: (1)** Thomas and Dana Beier, **(2)** David Blasi, **(3)** Clifford and Teresa Chaney, **(4)** Michael and Joni Cherry, **(5)** Anthony and Dorothy Damommio, **(6)** Roger and Sandra Hayes, **(7)** William and Carolyn Hill, **(8)** Richard and Gail Kamper, **(9)** Scott and Donna

### U.S. Brass v. Kochie et al. (Appeal No. 01-90-00825-CV)

U.S. Brass presents eight points of error, complaining generally that the DTPA plaintiffs were not consumers with respect to U.S. Brass; that the DTPA plaintiffs should not have been awarded damages in excess of actual damages because of U.S. Brass' settlement offer; that U.S. Brass should have been given a judgment credit based on the actual damages attributed to Vanguard, not on the Vanguard settlement amount; and that there was no evidence to support a finding of gross negligence against U.S. Brass. The DTPA plaintiffs present a cross-point of error, that it was error to deny them the mandatory doubling of the first $1,000 of actual damages.

**Consumer status**

In its first and second points of error, U.S. Brass asserts the trial court erred in entering a judgment for the DTPA plaintiffs because they were not "consumers" to U.S. Brass. According to U.S. Brass, there is no evidence that any of its representations relating to the plumbing system reached the DTPA plaintiffs and induced them to purchase their homes, and the DTPA plaintiffs were required to prove, and did not, that U.S. Brass misrepresented the plumbing system "in connection with" the transactions through which the DTPA plaintiffs purchased their homes.

The DTPA plaintiffs argue all that is required to be a consumer under the DTPA is that: (1) they have sought or acquired goods or services for purchase or lease, and (2) those goods or services must form the basis of their complaint.

To recover under the DTPA, a plaintiff must establish that he is a "consumer," that there were false, misleading, or deceptive acts or an unconscionable act, and that the act or acts constituted a producing cause of damage. *Custom Controls Co. v. MDS Qantel, Inc.*, 746 S.W.2d 261, 263 (Tex.App.—Houston [1st Dist.] 1987), *rev'd, Qantel Business Sys. v. Custom Controls Co.*, 761 S.W.2d

302 (Tex.1988); *Miller v. Soliz*, 648 S.W.2d 734, 739 (Tex.App.—Corpus Christi 1983, no writ); *Bormaster v. Henderson*, 624 S.W.2d 655, 660 (Tex.App.—Houston [14th Dist.] 1981, no writ); TEX.BUS. & COM.CODE ANN. § 17.50(a)(1), (3) (Vernon 1987). A "consumer" is "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services...." TEX. BUS. & COM.CODE ANN. § 17.45(4) (Vernon 1987).

A person who brings a private lawsuit under section 17.50 must be a consumer, as defined in section 17.45(4). *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351 (Tex.1987); *Sherman Simon Enter., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 15 (Tex. 1987); *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 706 (Tex.1983); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 538 (Tex.1981); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex.1980); *see also Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 388 (Tex.1982). The Texas Supreme Court has also stated:

> We have recognized at least two requirements to establish DTPA consumer status. First, the plaintiffs must have sought or acquired goods or services by purchase or lease. Second, the goods or services purchased or leased must form the basis of the complaint.

*Melody Home Mfg. Co.*, 741 S.W.2d at 351–52 (citations omitted) (citing *Sherman Simon Enter., Inc.*, 724 S.W.2d at 15 and *Cameron*, 618 S.W.2d at 539). Neither section 17.50 nor section 17.45 limits the application of the DTPA to deceptive practices committed by persons who furnish the goods or services on which the complaint is based or describes against whom a consumer may bring suit. *Cameron*, 618 S.W.2d at 540–41.

We disagree with U.S. Brass. We do not believe the Texas Supreme Court has grafted onto the definition of a consumer under the DTPA a requirement that, in order to be a

Lamb, (10) James Ledford, (11) Viraj and Penpit Lertsirisakron, (12) James and Kristine Means, (13) Erik and Michelle Meintser, (14) Troy and Holly Mitchell, (15) Charles and Patricia Ortiz,

(16) David and Evelyn Rawls, (17) Bret and Margaret Robertson, (18) Terry and Carol Rogers, (19) David and Jana Smith, (20) Danny and Carla Strait, and (21) Jack and Nancy Tittle.

"consumer," representations must be made directly by the defendant to the plaintiff or that the representations must be made in connection with a transaction between the plaintiff and the defendant. This becomes clear from a careful reading of *Flenniken* and *Cameron.*

In *Flenniken,* the Flennikens entered into a contract to have a home built, giving the contractor cash down and signing a mechanics' lien note. 661 S.W.2d at 706. The note was secured by a deed of trust on the Flennikens' property, which named the bank vice-president as trustee. The contractor assigned the note and contract lien to the bank in exchange for interim financing. The bank made payments to the contractor totaling more than half the note, but the contractor abandoned the project after completing only 20 percent of it.[8] When the Flennikens and the bank failed to agree on what to do with the unfinished house, the bank foreclosed on their property. The Flennikens sued the bank under the DTPA for unconscionable action. *Id.* The bank did not challenge the jury's finding of unconscionability, but argued the Flennikens were not consumers because they did not seek or acquire any goods or services from the bank. *Id.* The supreme court found there was only one transaction—the purchase of a house, and that the Flennikens were consumers to all parties who sought to enjoy the benefits of that transaction, including the bank. *Id.* at 707. The supreme court stated in *Flenniken:*

> Under section 17.50(a)(3), there is *no requirement that the defendant's unconscionable act occur simultaneously with the sale or lease of the goods or services* that form the basis of the consumer's complaint.

661 S.W.2d at 707 (emphasis added).

In *Cameron,* Terrell & Garrett was the real estate agent for the sellers of the home purchased by the Camerons. 618 S.W.2d at 537. Terrell & Garrett made a representa-

tion in the MLS guide about the amount of square footage in the house; the Camerons discovered after moving in that the amount was wrong; and the Camerons sued Terrell & Garrett. The trial court rendered a judgment notwithstanding the verdict for Terrell & Garrett; the court of appeals affirmed, holding that the Camerons were not consumers, but otherwise finding there was evidence to support the jury verdict. *Id.* at 538. The only issue before the supreme court was whether the Camerons were consumers. *Id.*

The supreme court recognized in *Cameron* "at least two requirements" for a person to qualify as a consumer under the DTPA: (1) a person must have sought or acquired goods or services by purchase or lease; and (2) the goods or services purchased or leased must form the basis of the complaint. *Id.* at 539. The court overruled several courts of appeals' opinions, including one from this Court,[9] which had held that a consumer is one who seeks or acquires goods or services *furnished by the defendant. Id.* The court said:

> Consumer is defined in section 17.45(4) only in terms of a person's relationship to a transaction in goods or services. It does not purport to define a consumer in terms of a person's relationship to the party he is suing. Section 17.45(4) does nothing more than describe the class of persons who can bring a suit for treble damages under section 17.50. It does not say who a consumer can sue under section 17.50 for a deceptive trade practice violation. With respect to whom a consumer can sue, section 17.-50(a)(1), the subsection under which this suit was tried, expressly states that a consumer can bring a suit if he has been adversely affected by "the use or employment by *any person* of an act or practice declared to be unlawful in section 17.46." Terrell & Garrett is a person under the Act. We, therefore, hold that a person need not seek or acquire goods or services

---

8. The bank made the disbursements to the contractor solely upon his application, never made on-site inspections, and never asked the Flennikens to approve the draws. *Longview Bank & Trust Co. v. Flenniken,* 642 S.W.2d 568, 569 (Tex.App.—Tyler 1982), *rev'd, Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705 (Tex. 1983).

9. *Barthlow v. Metcalf,* 594 S.W.2d 143 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ dism'd).

furnished by the defendant to be a consumer as defined in the DTPA. 618 S.W.2d at 541 (citations omitted) (emphasis original).

*Cameron* thus held that the absence of a relationship between the plaintiff and the defendant in a DTPA case did not deprive the plaintiff of consumer status. We do not read *Cameron* as establishing that to be a consumer, in addition to the requirements in section 17.45(4), a plaintiff must have a relationship to a transaction with the defendant. If anything, the supreme court has plainly indicated in *Flenniken* and *Cameron* that it will not narrow the definition of "consumer" under section 17.45(4) of the DTPA. *See also Kennedy v. Sale*, 689 S.W.2d 890, 892 (Tex.1985) (to accept the construction that only direct purchasers can be consumers, would be to read additional or different language into the DTPA, in contravention of its mandate of liberal construction).

We find additional support for our conclusion that the plaintiffs are consumers to U.S. Brass by analogy to *Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382 (Tex. 1982), and *Holland Mortgage & Investment Corp. v. Bone*, 751 S.W.2d 515 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). *Knight* and *Bone* discuss when the extension of credit, which alone is ordinarily not a good or service subject to the provisions of the DTPA, may subject the creditor to a transaction to liability under the DTPA.

In *Knight*, the plaintiff entered into a retail installment contract to purchase a used International Harvester dump truck from a company called Etex. 627 S.W.2d at 383. The transaction was financed by International Harvester Credit (IHCC). *Id.* at 389. In fact, the contract was drafted by IHCC, bore its logo, and contained a clause assigning the contract to IHCC. *Id.* The supreme court had no difficulty in finding the plaintiff was a " 'consumer' as to IHCC," finding the seller of the truck, Etex, and IHCC "so inextricably intertwined in the transaction as to be equally responsible for the conduct of the sale." *Id.* Similarly, in *Bone*, the plaintiffs established some evidence of a "tie-in" relationship between the builder of their home and the lender of the funds to build it. 751

S.W.2d at 518. The builder recommended the lender and arranged for an appointment between the plaintiffs and the lender, and the contract between the builder and the plaintiffs provided for inspections by the lender and completion of the builder's obligations after the lender's final inspection. *Id.* This Court concluded that because there was some evidence of a tie-in relationship between the builder and lender, the trial court did not err in deciding that the plaintiffs were consumers to all parties, the builder and lender, who sought to enjoy the benefits of the sale. *Id.*

A "tie-in" or "inextricable intertwining" between a *seller and lender* may cause a plaintiff to be a consumer with respect to the financing company as well as to the seller of the goods. *See Qantel Business Sys.*, 761 S.W.2d at 305. In *Qantel*, the issue was whether the manufacturer (Qantel) of the computer system could be liable for the deceptive practices of its distributor, who settled before trial. The supreme court stated "inextricably intertwined" was not an additional theory of vicarious liability, but might be used to establish equal responsibility for wrongful conduct. We read *Qantel* as suggesting that if two parties are inextricably linked, in ways other than seller and lender, a plaintiff may be a consumer with respect to both of them.

The plaintiffs here did not buy windows, a roof, or a plumbing system. They bought a completed home, ready for move-in. From our review of the statement of facts, the evidence generally shows that the homebuilder, General Homes, contracted with plumbers to furnish and install plumbing systems in the homes; the plumbers obtained plumbing supplies from the supply houses; U.S. Brass sold its plumbing products to the supply houses and advertised and made sales presentations on the merits of its products to General Homes, plumbing contractors, and municipal code bodies, such as the city of LaPorte. There is the same "inextricable intertwining" here that the supreme court and this Court found sufficient to make buyers "consumers" with respect to both the seller and financier of the transactions in *Knight* and *Bone*.

U.S. Brass' first and second points of error are overruled.

## Reducing actual damages by amount of settlement offers

■ In its third and fourth points of error, U.S. Brass contends: (1) the trial court erred in entering judgment for certain DTPA plaintiffs for an amount in excess of the actual damages, because U.S. Brass made a timely offer in writing to such DTPA plaintiffs to pay such damages in compliance with TEX.BUS. & COM.CODE ANN. § 17.505(c) (Vernon Supp.1993) (point three); and (2) the trial court erred in ruling that U.S. Brass' offers did not comply with section 17.505(c) (point four). Our discussion of these points of error relates to 21 of the DTPA plaintiffs.[10]

Under section 17.505(c), any person who receives notice of a consumer's DTPA claim under section 17.505(a) may tender to the consumer a written settlement offer within a specified period of time. TEX.BUS. & COM. CODE ANN. § 17.505(a), (c) (Vernon Supp. 1993). If rejected, the settlement offer may be filed with the court along with an affidavit certifying its rejection. TEX.BUS. & COM.CODE ANN. § 17.505(d) (Vernon Supp.1993). If the amount tendered in the settlement offer is the same as or more than, or if the court finds the amount to be "substantially the same" as, the actual damages awarded by the fact finder, the consumer may not recover an amount in excess of the amount tendered in the settlement offer or the amount of actual damages found by the fact finder, whichever is less. TEX.BUS. & COM.CODE ANN. § 17.-505(d).

The demand letters of the 21 DTPA plaintiffs were admitted into evidence. The settlement offers of U.S. Brass to the 21 DTPA plaintiffs, together with an affidavit certifying their rejection, were filed with the trial court, as required by TEX.BUS. & COM.CODE ANN. § 17.505(d). Following a hearing, the trial court found that U.S. Brass' offers did not comply with section 17.505(c) because they were conditional, not unrestricted, and

nothing more than negotiation. The trial court denied the request in U.S. Brass' motion to correct the judgment to delete any recovery for prejudgment interest, attorney's fees, or additional damages awarded the 21 DTPA plaintiffs.

The DTPA plaintiffs' demand letters requested a payment of $50,000 per family in actual damages. The demand letters stated that the actual damages consisted of diminution in the value of the homes, mental anguish damages, real and personal property damage, past repair costs, future repair costs, loss of enjoyment of the homes, additional damages, reasonable attorney's fees, and all other compensable damages allowed by law.

With the assumption that all of the parts in the plumbing system had been manufactured by U.S. Brass, U.S. Brass offered to pay for removing the plumbing system and replacing it with a proper system, and to reimburse the 21 DTPA plaintiffs for any costs incurred for being absent from their homes during the replacement work. U.S. Brass also offered to pay any previous damages for which the 21 DTPA plaintiffs could provide documentation, and reasonable attorney's fees incurred through the date of the demand letters, after the 21 DTPA plaintiffs' provided itemized statements of such fees. U.S. Brass did not offer to pay any specific monetary amount to any of these 21 plaintiffs.

Before trial, the parties stipulated to the amount of the DTPA plaintiffs' actual damages for the cost of replumbing each home and for past damages. The jury was not asked to determine any actual damages and did not award the DTPA plaintiffs any actual damages. Issues on additional damages, exemplary damages, and attorney fees were submitted to the jury, and the jury decided these.

U.S. Brass claims the 21 DTPA plaintiffs, to whom it made a timely, unconditional offer to settle their claims, cannot recover any damages in excess of their actual damages, because the jury did not award them an

---

**10.** Allam and Allam–Rogers, Barry, Brooks, Clark, J. & M. Davis, K. & S. Davis, Donzell, Dugan, Getto, Gibbons, Harrell, Hesse, Huckaby, Kondikoff, Lent, Manning, McClure, Partezana, W. & L. Smith, Staggs, and Vaughn. These are the DTPA plaintiffs named both in Appendix A of the brief of U.S. Brass and in U.S. Brass' motion to correct the judgment.

amount of actual damages in excess of what U.S. Brass originally offered them. U.S. Brass argues the trial court erred in ruling that its "offers" did not comply with section 17.505(c).

Based on the contents of U.S. Brass' settlement letters, and the evidence presented at the hearing on U.S. Brass' motion to correct the judgment, the trial court was entitled to find that U.S. Brass' settlement letters did not constitute "offers," because they were nothing more than an invitation to negotiate on, among other things, the cost of replumbing the 21 DTPA plaintiffs' homes, the amount of any other actual damages, the amount of attorney's fees, and whether all the parts in the plumbing system were manufactured by U.S. Brass. *See Morrow v. De Vitt*, 160 S.W.2d 977, 983 (Tex.Civ.App.—Amarillo 1942, writ dism'd w.o.m.) (an offer must be certain and unambiguous, and where an offer is so indefinite that it is impossible for a court to decide just what it means and to fix exactly the parties' legal liability, its acceptance cannot result in an enforceable contract; an invitation to enter into negotiations is not an offer, which, if accepted, forms a contract).

U.S. Brass' third and fourth points of error are overruled.

### Judgment credit for Vanguard settlement

In its fifth and sixth points of error, U.S. Brass asserts: (1) the trial court erred in overruling its motion for correction of judgment, ruling that Vanguard was a "settling person" under TEX.CIV.PRAC. & REM.CODE ANN. § 33.011(5) (Vernon Supp.1993), and giving U.S. Brass a dollar-for-dollar credit for the amount of the settlement (distributed prorata) reached by the plaintiffs and Vanguard under TEX.CIV.PRAC. & REM.CODE ANN. § 33.012(b)(1) (Vernon Supp.1993) (point five); and (2) the trial court erred in denying its motion for correction of judgment because U.S. Brass is entitled to a judgment credit for that portion of the actual damages attributable to Vanguard that was awarded to 44 of the Kochie plaintiffs (point six). We consider these points of error only with respect to these 44 plaintiffs.

The trial court entered a judgment against U.S. Brass based on the jury verdict and damages stipulated by the parties. Disregarding interest, attorney's fees, exemplary or additional damages, and court costs, which are not a subject of these points of error, whether a plaintiff (couple or individual) elected to recover under the DTPA or negligence, the plaintiff received the actual stipulated damages for that household minus a uniform credit of $5,971 given to U.S. Brass. The credit was a dollar-for-dollar credit (distributed prorata) based on the settlement amounts paid by the defendants who settled before trial and by Vanguard who settled after trial started. The trial court disregarded the percentages of causation attributed to Vanguard by the jury.

The amount of the Vanguard credit is challenged by U.S. Brass. Because Vanguard settled after the charge was read to the jury, and no change was made in the charge following the settlement, question 11 still asked the jury to allocate causation between U.S. Brass and Vanguard for 44 of the Kochie plaintiffs.[11] In response to question 11, the jury assigned a percentage of causation to both U.S. Brass and Vanguard.[12] U.S. Brass

---

11. Question 11 was submitted for the following plaintiffs who elected to recover under negligence: Beier, Blasi, Chaney, Cherry, Damommio, Hayes, W. & C. Hill, Kamper, Lamb, Ledford, Lertsirisakorn, Means, Meintser, Mitchell, Ortiz, Rawls, Robertson, T. & C. Rogers, D. & J. Smith, Strait, and Tittle. It was submitted for the following plaintiffs who elected to recover under the DTPA: Baxi, Baxter, Casas, Chandler, Chappa, Daniel, Dickinson, Gant, Gunderson, C. & T. Hill, Kilgallen, Kochie, Mays, Miles, Nail, Patton, Robbins, Sherwinski, C. & J. Smith, Stafford, Upton, Watts, and Williams.

12. The percentages were as follows: (1) Baxi, 70% U.S. Brass & 30% Vanguard; (2) Baxter, 71% U.S. Brass & 29% Vanguard; (3) Beier, 81% U.S. Brass & 19% Vanguard; (4) Blasi, 70% U.S. Brass & 30% Vanguard; (5) Casas, 70% U.S. Brass & 30% Vanguard; (6) Chandler, 70% U.S. Brass & 30% Vanguard; (7) Chaney, 70% U.S. Brass & 30% Vanguard; (8) Chappa, 70% U.S. Brass & 30% Vanguard; (9) Cherry, 92% U.S. Brass & 8% Vanguard; (10) Damommio, 70% U.S. Brass & 30% Vanguard; (11) Daniel, 70% U.S. Brass & 30% Vanguard; (12) Dickinson, 70% U.S. Brass & 30% Vanguard; (13) Gant, 70% U.S. Brass & 30% Vanguard; (14) Gunderson, 70% U.S. Brass & 30% Vanguard; (15) Hayes, 62% U.S. Brass & 38% Vanguard; (16) Hill, C. & T., 70% U.S. Brass & 30% Vanguard; (17) Hill, W. & C., 70% U.S. Brass & 30%

argues that Vanguard is not a "settling person," because it settled after the charge was read to the jury. According to U.S. Brass, it is entitled to receive a credit equal to the percentage of causation attributable to Vanguard multiplied by the total actual damages stipulated by the parties, rather than a credit based on a prorata portion of the settlement between Vanguard and the plaintiffs against the total actual damages.

■ The Texas Supreme Court has stated there are four distinct contribution schemes in Texas today: (1) the original contribution statute, TEX.CIV.PRAC. & REM.CODE ANN. § 32.001 (Vernon 1986); (2) former TEX.CIV. PRAC. & REM.CODE ANN. § 33.001, the comparative negligence statute; [13] (3) the comparative responsibility statute, TEX.CIV.PRAC. & REM.CODE ANN. § 33.001 (Vernon Supp.1993); and (4) *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 429 (Tex.1984). *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 5 (Tex. 1991). Former section 33.001 does not apply to this case because the case was filed after September 2, 1987. Act of June 16, 1987, 70th Leg., 1st C.S., ch. 2, § 4.05, 1987 Tex. Gen.Laws 37, 51. The *Duncan v. Cessna* comparative causation scheme does not apply to this case because it is not one involving strict liability, breach of warranty, or mixed theories of strict liability and negligence. *Sterling*, 822 S.W.2d at 5. Therefore, any credit U.S. Brass is to receive based on the Vanguard settlement or jury allocation of causation must be based either on current section 33.001 or section 32.001.

■ Chapter 33 of the Texas Civil Practice and Remedies Code addresses the comparative responsibility of a defendant for a plaintiff's damages. It applies to an action to recover damages for negligence resulting in personal injury, property damage, or death. TEX.CIV.PRAC. & REM.CODE ANN. § 33.001(a) (Vernon Supp.1993). Chapter 32 of the Texas Civil Practice and Remedies Code does not apply if a right of contribution, indemnity, or recovery between defendants is provided by another statute. TEX.CIV.PRAC. & REM. CODE ANN. § 32.001(b) (Vernon 1986). Accordingly, chapter 33 determines the computation of damages for the Kochie plaintiffs who elected to recover under negligence.

Four definitions are important to this discussion:

(1) "Claimant" means a party seeking recovery of damages pursuant to the provisions of Section 33.001, including a plaintiff....

(2) "Defendant" includes any party from whom a claimant seeks recovery of damages pursuant to the provisions of Section 33.001 *at the time of the submission of the case to the trier of fact.*

(3) "Liable defendant" means a defendant against whom a judgment can be entered for at least a portion of damages awarded to the claimant.

(5) "Settling person" means a person *who at the time of submission* has paid or promised to pay money or anything of monetary value to a claimant at any time in consideration of potential liability pursuant to the provisions of Section 33.001....

TEX.CIV.PRAC. & REM.CODE ANN. § 33.011(1), (2), (3), (5) (Vernon Supp.1993) (emphasis

Vanguard; (18) Kamper, 70% U.S. Brass & 30% Vanguard; (19) Kilgallen, 70% U.S. Brass & 30% Vanguard; (20) Kochie, 70% U.S. Brass & 30% Vanguard; (21) Lamb, 70% U.S. Brass & 30% Vanguard; (22) Ledford, 63% U.S. Brass & 37% Vanguard; (23) Lertsirisakorn, 65% U.S. Brass & 35% Vanguard; (24) Mays, 23% U.S. Brass & 77% Vanguard; (25) Means, 83% U.S. Brass & 17% Vanguard; (26) Meintser, 88% U.S. Brass & 12% Vanguard; (27) Miles, 70% U.S. Brass & 30% Vanguard; (28) Mitchell, 70% U.S. Brass & 30% Vanguard; (29) Nail, 70% U.S. Brass & 30% Vanguard; (30) Ortiz, 37% U.S. Brass & 63% Vanguard; (31) Patton, 70% U.S. Brass & 30% Vanguard; (32) Rawls, 70% U.S. Brass & 30% Vanguard; (33) Robbins, 70% U.S. Brass & 30% Vanguard; (34) Robertson, 70% U.S. Brass & 30% Vanguard; (35) Rogers, T. & C., 67% U.S. Brass & 33% Vanguard; (36) Sherwinski, 80% U.S. Brass & 20% Vanguard; (37) Smith, C. & J., 70% U.S. Brass & 30% Vanguard; (38) Smith, D. & J., 70% U.S. Brass & 30% Vanguard; (39) Stafford, 70% U.S. Brass & 30% Vanguard; (40) Strait, 70% U.S. Brass & 30% Vanguard; (41) Tittle, 70% U.S. Brass & 30% Vanguard; (42) Upton, 56% U.S. Brass & 44% Vanguard; (43) Watts, 33% U.S. Brass & 67% Vanguard; and (44) Williams, 70% U.S. Brass & 30% Vanguard.

13. Act of June 16, 1985, 69th Leg., R.S., ch, 959, § 1, 1985 Tex.Gen.Laws 3242, 3271, *amended by* Act of June 16, 1987, 70th Leg., 1st C.S., ch. 2, 1987 Tex.Gen.Laws 37, 40.

added). The concept of "time of submission" appears in two other places in chapter 33. A defendant is required to file its written election for type of settlement credit "before the issues of the action are submitted to the trier of fact." TEX.CIV.PRAC. & REM.CODE ANN. § 33.014 (Vernon Supp.1993). "Time of submission" is also used to define a contribution defendant. TEX.CIV.PRAC. & REM.CODE ANN. § 33.016 (Vernon Supp.1993).

■■■ When a court interprets a statute, it must give effect to all the words of statute and not treat any statutory language as surplusage, if possible. *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987); *HBA East, Ltd. v. JEA Boxing Co.,* 796 S.W.2d 534, 538 (Tex.App.—Houston [1st Dist.] 1990, writ denied). Accordingly, we hold that a party who settles after objections are made to the charge, after the charge is read to the jury, and after closing arguments, although before the jury begins deliberating, is not a settling person because the settlement had not been effected *at the time of submission.* We conclude that Vanguard, which settled with the plaintiffs after objections were made to the charge, after the charge was read to the jury, after closing arguments were made, and after the trial court recessed the proceedings, telling the jury to return the following morning at 9:00 a.m. to start its deliberations, but before those deliberations started, is not a "settling party" under section 33.011(5).

■■■ We now discuss the computation of the damages for the 21 plaintiffs who elected to recover under negligence and who are the subject of U.S. Brass' fifth and sixth points.

The plaintiffs were not assigned any percentage of responsibility. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 33.012(a) (Vernon Supp. 1993). Therefore, the amount of recovery to each plaintiff is the actual stipulated damages for each, reduced dollar for dollar by the pretrial settlements (excluding the Vanguard settlement) distributed prorata. TEX. CIV.PRAC. & REM.CODE ANN. § 33.012(b)(1) (Vernon Supp.1993).

Under TEX.CIV.PRAC. & REM.CODE ANN. § 33.013(a) (Vernon Supp.1993), U.S. Brass, a liable defendant, is liable to these 21 plaintiffs only for the percentage of damages found by the jury equal to its percentage of responsibility with respect to the property damage for which the damages are allowed. In short, U.S. Brass is liable only for the actual stipulated damages of each of the 21 plaintiffs multiplied by each of the appropriate percentages of causation found by the jury to be attributable to U.S. Brass.

We sustain points of error five and six as they relate to these 21 negligence plaintiffs.

U.S. Brass also asserts that it is entitled to a judgment credit under chapter 32 of the Texas Civil Practice and Remedies Code for 50 percent of the actual damages found for 23 of the DTPA plaintiffs [14] because the settlement with Vanguard constituted a settlement of one-half of the case. Alternatively, if chapter 32 does not apply, U.S. Brass contends it should receive a judgment credit in an amount equal to the percentages attributed to Vanguard by the jury in response to question 11.

■■■ We agree that the contribution schemes under *Duncan v. Cessna* and chapter 33 of the Texas Civil Practice and Remedies Code do not apply to these 23 DTPA plaintiffs. *Duncan v. Cessna* does not apply for the reasons set forth above in our discussion of the 21 negligence plaintiffs. *See Sterling,* 822 S.W.2d at 5.

Chapter 33 does not apply to an action brought under the DTPA, except as set forth in TEX.BUS. & COM.CODE ANN. § 17.-50(b)(1)(A), (B) (Vernon Supp.1993). TEX. CIV.PRAC. & REM.CODE ANN. § 33.002(b)(2) (Vernon Supp.1993). Those paragraphs provide, among other things, that comparative responsibility does not apply to DTPA actions unless damages are sought for (1) death; (2) personal injury other than mental anguish or distress associated with a DTPA violation that does not involve death or bodily injury; or (3) damage to property other than the goods acquired by the purchase or lease

---

**14.** Baxi, Baxter, Casas, Chandler, Chappa, Daniel, Dickinson, Gant, Gunderson, C. & T. Hill, Kilgallen, Kochie, Mays, Miles, Nail, Patton, Robbins, Sherwinski, C. & J. Smith, Stafford, Upton, Watts, and Williams.

that is involved in the consumer's action or claim if that damage arises out of an occurrence that involves death or bodily injury. TEX.BUS. & COM.CODE ANN. § 17.50(b)(1)(A). Section 6 of the act creating paragraphs (A) and (B) provided that they would apply only to actions or claims commenced on or after September 1, 1989. Act of June 14, 1989, 71st Leg., R.S., ch. 380, § 6, 1989 Tex.Gen. Laws 1490, 1493. This lawsuit was filed on February 8, 1989, and damages are *not* sought for death, personal injury (other than mental anguish), or property damage arising out of an occurrence that involved death or bodily injury. Thus, chapter 33 does not apply to these 23 DTPA plaintiffs.

█ The supreme court has stated that chapter 32 of the Texas Civil Practice and Remedies Code, the original contribution statute, is applicable to suits based on the DTPA. *Sterling*, 822 S.W.2d at 6 n. 7.[15] However, chapter 32 is silent about the right of contribution against a settling tortfeasor who is not a party to the judgment. *Sterling*, 822 S.W.2d at 5; *Cypress Creek Util. Serv. Co. v. Muller*, 640 S.W.2d 860, 862 (Tex.1982). There developed at common law two kinds of credits for reducing the damages paid by the nonsettling defendant to the plaintiff by the amount of settlements received by the plaintiff: (1) a credit for the dollar amount of the settlement under *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703 (1935); or (2) a proportionate reduction in damages under *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1964).

█ The only election of credit for settlements filed by U.S. Brass stated: "This election is made only with respect to those claims and *causes of action to which Chapter 33* of the Civil Practice and Remedies Code applies...." (Emphasis added.) As we noted above, chapter 33 is inapplicable to these 23 DTPA plaintiffs. U.S. Brass made no election (either a *Bradshaw* or *Palestine Contractors* credit) in connection with causes of action covered by chapter 32. U.S. Brass did not argue in its motion for correction of judgment for a judgment credit equal to 50

percent of the actual damages found for the DTPA plaintiffs because they settled one-half of their case with Vanguard (i.e., the *Palestine Contractors* credit). It argued for a judgment credit equal to the percentage of causation attributed by the jury to Vanguard multiplied by the actual damages. We also note that the amount of the Vanguard settlement ($21,000) is less than half of the approximately $592,000 judgment for actual damages awarded against U.S. Brass. *See Gattegno v. The Parisian*, 53 S.W.2d 1005, 1008 (Tex.Comm'n App.1932, holding approved).

Therefore, we find the trial court did not err in giving U.S. Brass a dollar for dollar credit against the actual damages awarded these 23 DTPA plaintiffs. *See Sterling*, 822 S.W.2d at 7–8; *Ojeda de Toca v. Wise*, 748 S.W.2d 449, 451 (Tex.1988). We also find no basis in chapter 32 of the Texas Civil Practice and Remedies Code, or the cases interpreting it, to credit U.S. Brass for the percentage of actual damages attributed by the jury to Vanguard.

We overrule U.S. Brass' fifth and sixth points of error as they relate to these 23 DTPA plaintiffs.

**Gross negligence**

█ In its seventh and eighth points of error, U.S. Brass asserts there was no evidence its conduct was gross negligence that proximately caused damage to the plaintiffs; therefore, a question on gross negligence should not have been submitted to the jury over the objections of U.S. Brass, and the trial court should not have overruled its motion for a directed verdict with respect to gross negligence.

█ "Gross negligence" is "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 572 (Tex.1985). A plaintiff may prove a defendant's gross negligence by proving that the defendant had actual subjective knowledge that its conduct

---

**15.** We assume that the supreme court's statement applies to cases filed before September 1, 1989, and to those cases filed on or after that date to which chapter 33 is inapplicable.

created an extreme degree of risk (subjective test) or that under the surrounding circumstances a reasonable person would have realized that its conduct created an extreme degree of risk to the safety of others (objective test). *Williams,* 699 S.W.2d at 573. In determining whether there is any evidence to support a finding of gross negligence, this Court considers all evidence and inferences that tend to support the finding and rejects all contrary evidence and inferences. *Williams,* 699 S.W.2d at 574.

The plaintiffs' seventh amended complaint alleged that U.S. Brass was grossly negligent for:

(1) failing to adequately design the system or a component thereof;

(2) failing to adequately manufacture the system or components thereof;

(3) failing to adequately inspect or test the system or components thereof;

(4) failing to give instructions or adequate instructions on the installation of the system or components thereof;

(5) failing to adequately design the installation tools and equipment used in the installation of the system;

(6) failing to give warnings or adequate warnings regarding the limitation of use of the system or components thereof;

(7) representing that the systems would be suitable for site built housing with conscious indifference to its affect [sic] on users of the systems, including the plaintiffs.

Dr. Chudnovsky, a professor of mechanics and materials and the plaintiffs' expert witness, testified he inspected and analyzed the actual fittings that failed in some of the plaintiffs' homes. He testified the design of the system was defective because the design leads to premature failure. He testified that one of the reasons the system was defective was that the Celcon material used for the fittings would break down when exposed to chemicals in ordinary drinking water where some of the homes were built. Chudnovsky testified he was aware of a lot of problems with the system in 1981 and 1982. On cross-examination, Chudnovsky stated he did not know about the evidence that existed in 1980 and 1981 showing premature failure of Celcon parts in household plumbing applications caused by chlorine.

The plaintiffs also presented the testimony of Phil Tripp who was a product development specialist for U.S. Brass between early January 1980 and April 1983. He testified his job was to work on product claims for the plumbing system and to gather information on product failures and submit written reports to U.S. Brass. He testified as time went on, he felt that there were problems with the tools, rings and fittings, and that the system was not yet perfected.

Tripp also testified about a four-page memorandum, dated January 18, 1982, he wrote to the regional sales manager of U.S. Brass. On page four of this memorandum, he wrote:

My understanding is that U.S. Brass intends to spend $7.5 million on a new manufacturing plant for Qest. As much as I believe in our polybutylene systems, I still sense enormous problems that still need to be overcome and I suggest a very serious research and development program to perfect our fittings, tools and rings.

Tripp testified he subsequently received a phone call from someone with U.S. Brass who told him to destroy the last two pages of the memorandum because they would adversely affect U.S. Brass in the event of a law suit. Everyone else who received a copy of Tripp's memorandum was also instructed to destroy the last two pages.

U.S. Brass argues that under either the subjective or objective tests set out in *Williams,* there is no evidence to support a finding that it was grossly negligent when the plumbing system was installed in the plaintiffs' homes between 1980 and 1982. It argues the plaintiffs' evidence shows U.S. Brass did not become aware of any problems with the plumbing system until after the system was installed in their homes.

According to U.S. Brass, Tripp's memorandum of January 18, 1982, was written after the plumbing system had been installed in most of the plaintiffs' homes between 1980 and 1982. However, Tripp's memorandum was written at a time when, according to U.S.

Brass, the plumbing system had not been installed in at least some of the plaintiffs' homes. Tripp also testified he worked on product claims for the plumbing system and gathered information about its failures between January 1980 and April 1983.

In addition, Chudnovsky testified about the problems with the system after its installation in 1981 and 1982, a period of time before the system had been installed in at least some of the plaintiffs' homes. We find there is some evidence to support a finding that U.S. Brass was aware of problems with the plumbing system before the system was installed in the plaintiffs' homes.

The plaintiffs also alleged that U.S. Brass was grossly negligent for failing to adequately design, manufacture, and inspect or test the system or its components. The evidence in Tripp's memorandum, together with Chudnovsky's testimony, supports an inference that U.S. Brass failed to adequately design, manufacture, and inspect or test the system before U.S. Brass introduced it into the marketplace. The foregoing evidence, together with the inferences that may be drawn from it, constitutes some evidence that a reasonable person in U.S. Brass' place would have realized that its acts and omissions, in connection with designing, manufacturing, and inspecting and testing the system, created an extreme degree of risk.

We find there was some evidence to support the submission of a question on gross negligence to the jury. U.S. Brass' seventh and eighth points of error are overruled.

**Cross-point: mandatory doubling of damages**

In a single cross-point, the DTPA plaintiffs contend the trial court erred in denying each DTPA plaintiff, husband *and* wife, the mandatory doubling of the actual damages that do not exceed $1,000. TEX.BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon 1987). The trial court awarded each couple electing a DTPA theory of recovery an additional $2,000 because the actual damages of each couple exceeded $1,000. The DTPA plaintiffs claim that each member of the couple was entitled

to an additional $2,000, or a total per couple of $4,000.

Here, one charge was submitted for each couple. The charge defined "this plaintiff" as the couple for whom the charge was submitted. Actual damages for each couple were stipulated and not allocated between husband and wife.

■ We hold that when actual damages are awarded to husband and wife under section 17.50(b)(1) of the DTPA, are not allocated to either spouse, flow from the same violations of the DTPA, and constitute damages for the same losses sustained by husband and wife, then husband and wife together are entitled to one award of "two times that portion of the actual damages that does not exceed $1000. *See, e.g., Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d 239, 240 (Tex.1985) (husband and wife counterclaimed for DTPA damages; jury found DTPA violation and trial court awarded couple $2000 under second sentence of section 17.50(b)(1)); *Martin v. McKee Realtors, Inc.,* 663 S.W.2d 446, 447 (Tex.1984) (husband and wife sued under DTPA; jury found violation and trial court awarded $2000 statutory damages); *J.B. Custom Design & Bldg. v. Clawson,* 794 S.W.2d 38, 41 (Tex.App.—Houston [1st Dist.] 1990, no writ) (husband and wife sued under DTPA; jury found violation and trial court awarded couple $2000 in additional mandatory damages); *Hennessey v. Skinner,* 698 S.W.2d 382, 385 (Tex.App.—Houston [14th Dist.] 1985, no writ) (individual and corporation through which he did business sued under DTPA; trial court found violations under DTPA and should have added $2000 to actual damages); *Lone Star Ford, Inc. v. McGlashan,* 681 S.W.2d 720, 725 (Tex.App.—Houston [1st Dist.] 1984, no writ) (husband and wife sued under DTPA; trial court found violation and awarded couple $2000 under section 17.-50(b)(1)).

The trial court did not err in awarding each couple a mandatory doubling of damages in the amount of $2,000 instead of $4,000. We overrule the DTPA plaintiffs' cross-point of error.

We reverse the judgment in favor of 21

negligence plaintiffs [16] because the trial court erred in its computation of the actual damages and settlement credits awarded as we discussed in connection with points of error five and six. We remand this portion of the judgment to the trial court with instructions that each of these 21 plaintiffs recover from U.S. Brass his, her, or their actual stipulated damages multiplied by the percentage of responsibility attributed to U.S. Brass by the jury for the respective plaintiff plus appropriate prejudgment interest. The exemplary damages remain unchanged. We also instruct the trial court to reduce the settlement credit by the sum attributable to the Vanguard settlement.

### *Knowlton et al. v. U.S. Brass et al. & Kochie et al. v. U.S. Brass (Appeal No. 01–90–00612–CV)*

U.S. Brass and Celanese filed a joint motion for summary judgment against the Knowlton plaintiffs, contending they were barred from recovery based on the doctrine of res judicata and because the statute of limitations had run on their claims. Shell filed a motion for summary judgment also asserting that the doctrine of res judicata barred the Knowlton plaintiffs from any recovery. The trial court granted the summary judgment motions as part of the final judgment and did not specify the grounds.

The Knowlton plaintiffs contend, in four points of error, that the summary judgment motions were insufficient to conclusively prove either the defense of res judicata or limitations, and that their claims are not barred by the doctrine of res judicata or the statute of limitations. The DTPA plaintiffs argue in the fifth point of error, as they do in the cross-point in appeal number 01–90–00825–CV, that the mandatory doubling of DTPA actual damages, which do not exceed $1,000, should have been $4,000 and not $2,000 per couple.

 A summary judgment is proper when a movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); Tex.R.Civ.P. 166a(c). Evidence favorable to the nonmovant will be taken as true in deciding whether there is a disputed material fact issue that precludes summary judgment. *Id.* Every reasonable inference must be indulged in favor of the nonmovant and any doubt resolved in its favor. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). If a defendant moves for summary judgment based on an affirmative defense, the defendant's burden is to prove conclusively all the elements of the affirmative defense as a matter of law. *Id.* Unless the movant conclusively established the affirmative defense, the nonmovant plaintiff has no burden in response to a motion for summary judgment filed on the basis of an affirmative defense. *Torres v. Western Casualty & Sur. Co.*, 457 S.W.2d 50, 52 (Tex. 1970). When a trial court's order does not specify the grounds relied on for its ruling, the summary judgment will be affirmed if any one of the grounds advanced in the summary judgment motion is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Home Indemn. Co. v. Pate*, 814 S.W.2d 497, 500 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

### Res judicata

The Knowlton plaintiffs' first and second points of error assert the trial court erred in granting summary judgment because: (1) the defendants' summary judgment motions were legally insufficient to conclusively prove the affirmative defense of res judicata as a matter of law (point one); and (2) the plaintiffs' claims are not barred by the doctrine of res judicata (point two).

 Summary judgment may be granted upon a proper plea of res judicata. *Olivarez v. Broadway Hardware, Inc.*, 564 S.W.2d 195, 197 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *see DeBord v. Muller*, 446 S.W.2d 299, 300–301 (Tex.1969).

 A valid judgment is res judicata in all subsequent actions between the same

---

**16.** Beier, Blasi, Chaney, Cherry, Damommio, Hayes, W. & C. Hill, Kamper, Lamb, Ledford, Lertsirisakorn, Means, Meintser, Mitchell, Ortiz, Rawls, Robertson, T. & C. Rogers, D. & J. Smith, Strait, and Tittle.

parties involving "the points at issue and adjudicated in the first suit." *Voskamp v. Arnoldy,* 749 S.W.2d 113, 125–26 (Tex.App.—Houston [1st Dist.] 1987, writ denied) (op. on reh'g) (quoting *Abbott Laboratories v. Gravis,* 470 S.W.2d 639, 642 (Tex.1971)). A person who is not a party, but who is in privity with the parties in an action terminating in a valid judgment, is also bound by the rule of res judicata. *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex.1971); *see Brown v. Prairie View A & M Univ.,* 630 S.W.2d 405, 408 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Res judicata bars the subsequent litigation of all issues connected to a cause of action or defense which, with the use of diligence, might have been tried in the former action, as well as those that were actually tried. *Ogletree v. Crates,* 363 S.W.2d 431, 435 (Tex.1963); *Freeman v. McAninch,* 87 Tex. 132, 27 S.W. 97, 99 (1894). However, the earlier judgment is res judicata of the second suit only if the claim or controversy at issue in the earlier suit is identical to the subject matter of the second action. *Griffin v. Holiday Inns of America,* 496 S.W.2d 535, 538 (Tex.1973); *Voskamp,* 749 S.W.2d at 126.

▪ To establish the defense of res judicata, the summary judgment movant must establish: (1) there was a prior final judgment on merits by a court of competent jurisdiction; (2) the parties, or those in privity with them, must be identical in both suits; and (3) the same cause of action must be involved in both suits. *Brown,* 630 S.W.2d at 408.

Shell attached to its summary judgment motion the following evidence: (1) the amended final judgment signed on March 3, 1989 in *Michael Diehl, et al. v. General Homes Corp., et al.,* No. 87–21479 (Dist. Ct. of Harris County, 151st Dist. of Texas) (*Diehl*); and (2) the plaintiffs' seventh amended original petition in *Diehl.* Shell's summary judgment motion referenced the fourth amended petition in the current case and stated it was attached as an exhibit. U.S. Brass and Celanese attached to their summary judgment motion the affidavit of attorney Kurt Nelson. Their motion referenced the amended final judgment and the

plaintiffs' petition from the *Diehl* case attached to Shell's motion. The motion also referenced the fourth amended petition in the current case.

The Knowlton plaintiffs filed responses and affidavits in opposition to both summary judgment motions. The affidavits showed:

(1) Evelyn Anderson bought her house on May 4, 1988 from the Grahams. She never met the Grahams; did not receive any money for damages at the house; and did not know that the Grahams had been involved in litigation concerning the house.

(2) The Knowltons bought their house on March 1, 1989 and dealt with the Veterans' Administration. They never met Fran Poye; did not receive any money for damages at the house; and did not know that the house had been involved in a legal dispute.

(3) The Stones bought their house on November 30, 1988. They never met the Thorntons and dealt with the realtor and HUD; they did not receive any money for damages at the house, but the house had been replumbed; they did not know that the house had been involved in a legal dispute.

(4) The Sells bought their house around July 1988. They dealt with the realtor and HUD. They never met the Garcias; did not know the house was involved in a legal dispute; and did not receive any money for damages at the house.

(5) The Febbos bought their house around March 1988. They dealt with the realtor and the Veterans' Administration. They never met the Brownfields; did not know the house was involved in a legal dispute; and did not receive any money for damages at the house, which they fixed themselves.

It is undisputed that the Knowlton plaintiffs were not parties in the *Diehl* litigation. However, they strenuously argue on appeal, as they did in their responses to the summary judgment motions, that they are not in privity with the plaintiffs in the *Diehl* litigation.

▪ Generally, there is no prevailing definition of privity. *Benson,* 468 S.W.2d at

363. Privity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same state of facts. *Id.* Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right. *Id.* Privity has been defined as meaning the mutual or successive relationship to the same rights of property. *Id.* All persons are privy to a judgment whose succession to the rights of property therein adjudicated are derived through or under one or the other of the parties to the action. *Kirby Lumber Corp. v. Southern Lumber Co.,* 145 Tex. 151, 196 S.W.2d 387, 388 (1946). To determine the question of privity, we consider the claims that were litigated in *Diehl* and the relationship of the Knowlton plaintiffs to five of the litigants in *Diehl. See Olivarez,* 564 S.W.2d at 199.

In the *Diehl* litigation, in the trial court, the Garcias, Grahams, Poye, and Thorntons generally recovered for damages to their homes and personal property caused by the leaking plumbing system, but not after the dates their homes were sold. They also recovered damages for replacement of the plumbing system (except for the Brownfields and the Grahams, who sought no recovery for replacement of the plumbing system). The Brownfields made no recovery at all.

Although the Knowlton plaintiffs own the homes formerly owned by five of the litigants in *Diehl,* there is no evidence that they sought the same damages awarded to the Garcias, Grahams, Poye, and Thorntons. For example, they could be seeking recovery for damage to the house and personal property caused by leaks occurring after they bought their homes, but before any judgment in the *Diehl* litigation. There is no evidence that the Knowlton plaintiffs have succeeded to any right of property adjudicated in *Diehl.* The only relationship between the current and former homeowners is through the chain of title. With the exception of Evelyn Anderson, it appears that the Knowlton plaintiffs bought their homes after foreclosure and not directly from the litigants in

*Diehl.* We conclude there is no summary judgment evidence of privity between the Knowlton plaintiffs and the *Diehl* litigants.

Most of the cases relied on by the defendants involved disputes relating to the ownership of or title to real property, and these cases applied the rule that all persons are privy to a judgment adjudicating rights to property where their succession to the property rights adjudicated in the judgment are derived through or under one or the other parties to the action, and which accrued subsequent to the commencement of the action. *See Swilley v. McCain,* 374 S.W.2d 871, 874–75 (Tex.1964); *Cain v. Balcom,* 109 S.W.2d 1044, 1046 (1937); *Lemon v. Spann,* 633 S.W.2d 568, 571 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.); *Morrison v. Cloud,* 13 S.W.2d 735, 737 (Tex.Civ.App.—Waco 1929, no writ); *Home Trading Co. v. Hicks,* 296 S.W. 627, 630–31 (Tex.Civ.App.—San Antonio 1927), *rev'd,* 11 S.W.2d 292 (Tex.Comm'n App.1928, holding approved). These cases do not apply because neither *Diehl* nor this case involves any dispute relating to the ownership of or title to the homes.

The other cases relied on by the defendants are distinguishable on their facts because in those cases the interest litigated in the first suit was identical to the interest sought to be litigated in the second suit. *See Grimm v. Rizk,* 640 S.W.2d 711, 714–15 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (trustee in first action asserted, on behalf of the trustee beneficiaries, the identical rights and interests that the beneficiaries of the trust sought to assert in the second action; the trustee in the first action was acting at all times in a representative capacity for the beneficiaries of the trust), *cert. denied,* 464 U.S. 1045, 104 S.Ct. 714, 79 L.Ed.2d 177 (1984); *Myrick v. Moody Nat'l Bank,* 590 S.W.2d 766, 769 (Tex.Civ.App.— Houston [14th Dist.] 1979, writ ref'd n.r.e.) (trustee bank in first action asserted, on behalf of the beneficiary of the trust, the identical interest that the beneficiary of the trust sought to assert in the second action); *Wilson v. Henwood,* 337 S.W.2d 194, 196–97 (Tex.Civ.App.—Amarillo 1960, writ ref'd n.r.e.) (executor of deceased's estate was privy to a prior judgment between the plaintiff and the guardian of the deceased's estate

because the executor succeeded the guardian as the executor of the deceased's estate).

We find that the defendants, as summary judgment movants, failed to establish at least one of the elements of their affirmative defense of res judicata—that the Knowlton plaintiffs were parties to, or in privity with the parties to, the *Diehl* litigation. We do not comment on whether they established any of the other elements of their affirmative defense.

We sustain the Knowlton plaintiffs' first point of error. It is unnecessary for us to discuss the second point of error.

## Limitations

The Knowlton plaintiffs' third and fourth points of error assert the trial court erred in granting summary judgment for U.S. Brass and Celanese because: (1) the defendants' summary judgment motions were legally insufficient to conclusively prove the affirmative defense of limitations as a matter of law (point three); and (2) the Knowlton plaintiffs' claims are not barred by limitations (point four).

■■■ The Knowlton plaintiffs alleged causes of action based on negligence, strict liability, and violations of the DTPA. A cause of action for negligence is governed by the two-year statute of limitations. *American Centennial Ins. Co. v. Canal Ins. Co.*, 810 S.W.2d 246, 255 (Tex.App.—Houston [1st Dist.] 1991), *aff'd in part and rev'd in part*, 843 S.W.2d 480 (Tex.1992);[17] Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986). Suit must be brought no later than two years from the date the cause of action accrued. *American Centennial Ins. Co.*, 810 S.W.2d at 255; Tex.Civ.Prac. & Rem.Code Ann. § 16.-003(b) (Vernon 1986). The limitation period for an action for strict tort liability is two years. *Cleveland v. Square–D Co.*, 613 S.W.2d 790, 792 (Tex.App.—Houston [14th Dist.] 1981, no writ). The discovery rule is applicable to strict liability. *Coody v. A.H. Robins Co.*, 696 S.W.2d 154, 155 n. 1 (Tex. App.—San Antonio 1985, writ dism'd). Any action brought under the DTPA must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive acts or practice. *Willis v. Maverick*, 760 S.W.2d 642, 647 (Tex.1988); Tex.Bus. & Com.Code Ann. § 17.565 (Vernon 1987).

■■■ A defendant seeking summary judgment based on limitations must prove when the cause of action accrued and must negate the discovery rule (if applicable) by proving there is no genuine issue of material fact about when the plaintiff discovered or should have discovered the nature of the injury. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990).

The affidavit of the attorney for U.S. Brass swore that the statements contained in paragraphs one through nine of the statement of undisputed facts in the summary judgment motion were true and correct based upon a review of the various petitions, jury verdict, and judgment. Those statements included the following:

(1) The Knowltons joined the lawsuit on August 31, 1989. The previous owner, Fran Poye, complained about the plumbing system in the house through the same attorney on March 17, 1987.

(2) The Sells joined the lawsuit on August 31, 1989. The previous owners, the Garcias, complained about the plumbing system in the house through the same attorney on February 20, 1987.

(3) The Stones joined the lawsuit on July 19, 1989. The previous owners, the Thorntons, complained about the plumbing system in the house through the same attorney on February 20, 1987.

(4) The Febbos joined the lawsuit on July 19, 1989. The previous owners, the Brownfields, filed suit over the plumbing in the house on May 11, 1987.

(5) Evelyn Anderson joined the lawsuit on July 19, 1989. The previous owners, the Grahams, filed suit over the plumbing in the house on May 28, 1987.

The affidavit does not state when the Knowlton plaintiffs contacted the attorney.

---

**17.** The supreme court agreed that any claims for negligence were barred by the applicable statutes of limitations. 843 S.W.2d at 483.

Further, as we noted earlier, the Knowlton plaintiffs' affidavits attached to their response to the summary judgment motion showed that they had bought their homes on March 1, 1989 (Knowltons), July 1988 (Sells), November 30, 1988 (Stones), March 1988 (Febbos), and May 4, 1988 (Anderson). In short, according to the summary judgment evidence, all of the Knowlton plaintiffs filed suit less than two years after they purchased their homes.

On appeal, the Knowlton plaintiffs argue that U.S. Brass and Celanese failed to negate the discovery rule. U.S. Brass answers that the Knowlton plaintiffs are in privity with the former owners of their homes (litigants in *Diehl*), and the knowledge of the former owners is imputed to the Knowlton plaintiffs. According to U.S. Brass (relying on privity), because the Knowlton plaintiffs filed their lawsuits more than two years after the former owners filed theirs, the Knowlton plaintiffs are barred from recovery by limitations.

Because we have found the summary judgment evidence insufficient to establish privity between the Knowlton plaintiffs and the former homeowners in the *Diehl* litigation for purposes of the affirmative defense of res judicata, it is also insufficient to establish privity for purposes of a limitations defense. Moreover, the summary judgment evidence does not establish that the Knowlton plaintiffs filed suit later than two years after their cause of action accrued or after they discovered or should have discovered the facts giving rise to a cause of action.

We sustain the Knowlton plaintiffs' third point of error. It is unnecessary for us to discuss the fourth point of error.

**Mandatory doubling of damages**

The DTPA plaintiffs, in the fifth point of error, contend the trial court erred in failing to double actual damages not in excess of $1,000 for each husband and wife. In short, they claim entitlement to $4,000 per couple, not $2,000 per couple as awarded by the trial court. We overrule this point of error because the plaintiff homeowners limited their appeal to the take-nothing judgment against the Knowlton plaintiffs.

Because we have sustained the Knowlton plaintiffs' first point of error, we reverse the summary judgment against them granted in favor of Shell. Because we have sustained the Knowlton plaintiffs' first and third points of error, we reverse the summary judgment against them granted in favor of U.S. Brass and Celanese. We sever the Knowlton plaintiffs and their causes of action from the trial court's judgment and remand them to the trial court.

Except with respect to the 21 negligence plaintiffs discussed in connection with appeal number 01–90–00825–CV above, we affirm the remainder of the trial court's judgment.