**HOLLAND MORTGAGE AND INVESTMENT CORPORATION, Appellant,**

**v.**

**Floyd BONE and Rhonda Bone, Appellees.**

**No. 01–86–00420–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 30, 1987.

John L. Carter, Vinson & Elkins, Houston, for appellant.

George Pain, Houston, for appellees.

Before JACK SMITH, DUGGAN and COHEN, JJ.

JACK SMITH, Justice.

This is an appeal from a suit to recover damages from the builder of a home and the mortgage company that financed the purchase. A jury found breaches of warranty, negligence, and violations of the Deceptive Trade Practices Act by Monroe, the builder, and two violations of the Deceptive Trade Practices Act (DTPA) by the appellant (the lender). The trial court entered a $33,000 judgment against Monroe and the appellant, jointly and severally. The appellant alleges six points of error.

In February of 1979, the appellees contracted to purchase a house for $86,900 from Bud Monroe Building Co. Appellant provided the financing for this purchase. In May of 1979, the house flooded. The appellees complained to Monroe and remedial measures were taken to cure the problem. The house flooded again in May of 1980, November of 1981, and October of 1984. In May of 1982, the appellees brought suit against Monroe and Kickerillo Company, the developer of the subdivision, claiming that their home was built too low or that the lot had been improperly contoured, which resulted in flooding of the

house during heavy rains. In December of 1982, the appellees joined the appellant as a defendant in the suit after learning that Bud Monroe Building Co. was no longer in business.

■ In its first point of error, the appellant contends that the appellees' claims against it were barred by the two-year statute of limitations.

Citing *Brooks Fashion Stores, Inc. v. Northpark National Bank*, 689 S.W.2d 937 (Tex.App.—Dallas 1985, no writ), and *Marcotte v. American Motorists Insurance Co.*, 709 F.2d 378 (5th Cir.1983), the appellant asserts that the two-year statute of limitations is applicable because the appellant was not a party to the written contract of which the appellees complain, and any cause of action regarding the appellant would, therefore, have to be based on oral misrepresentations made by the appellant. The appellees, on the other hand, assert that the four-year statute of limitations is the proper limitations period governing the present facts because their claims against the appellant grow out of transactions in writing.

The DTPA, as amended August 27, 1979, provides for a two-year statute of limitations period for actions brought under the Act. This two-year statute of limitations was to be applied prospectively only. Tex. Bus. & Com.Code Ann. sec. 17.56A (Vernon Supp.1987). The claims in the instant case arose prior to the 1979 amendment; therefore we must look to the statutes governing other claims to determine the applicable limitation period. Since appellees' claims do not arise out of a contract between the parties or a tort, the former Tex.Rev.Civ. Stat.Ann. art. 5529 (Vernon 1958) provides the applicable limitation period. This article prescribes a four-year statute of limitations. Therefore, appellees' cause of action against the appellant was not barred.

Appellant's first point of error is overruled.

■ Appellant contends in its second point of error that the appellees did not seek or acquire goods and services from the appellant, and therefore were not consumers who could assert a cause of action under the DTPA.

Whether or not a plaintiff is a "consumer" under the DTPA is a question of law to be determined by the trial court from the evidence, and the trial court will not submit issues to the jury as violations of the DTPA if it has determined that the plaintiff is not a consumer. *Reed v. Israel Nat'l Oil Co., Ltd.*, 681 S.W.2d 228 (Tex.App.— Houston [1st Dist.] 1984, no writ). In the instant case, it can be presumed that the trial court determined that the appellees were consumers under the Act because the trial court submitted issues to the jury as to violations of the DTPA by appellant, and denied appellant's j.n.o.v. motion on that basis. The appellant contends that the trial court erred in entering judgment under the DTPA because the appellees were not "consumers."

In order to prevail on an action brought under the DTPA, one must be a "consumer." *Kennedy v. Sale*, 689 S.W.2d 890 (Tex.1985); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex.1980). A "consumer" is defined in the Act as "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services ..." Tex.Bus. & Com. Code Ann. § 17.45(4) (Vernon Supp.1987). "Goods" are defined as "tangible chattels or real property purchased or leased for use." Tex.Bus. & Com.Code Ann. § 17.45(1) (Vernon Supp.1987). "Services" include "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." Tex.Bus. & Com.Code Ann. § 17.45(2) (Vernon Supp.1987). The goods or services sought or acquired by the consumer must form the basis of the DTPA complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981).

The appellees contend that they are consumers because their objective in borrowing the money from the appellant was the purchase of the house. Appellant relies on *Riverside National Bank v. Lewis*, 603 S.W.2d 169 (Tex.1980), which appeared to exempt lenders from the Act, and held that

a person who seeks to borrow money in order to refinance a loan on his car is not a consumer because the transaction does not involve the acquiring of a good or service. However, as explained in *La Sara Grain v. First National Bank of Mercedes,* 673 S.W.2d 558, 566 (Tex.1984), subsequent decisions by the Supreme Court have limited *Riverside* to its facts, i.e., the extension of credit unrelated to a specific acquisition. In *Knight v. Int'l Harvester Credit Corp.,* 627 S.W.2d 382, 389 (Tex.1982) and *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 707 (Tex.1983), the Supreme Court concluded that borrowers were consumers because the loans in question were used for the purchase of a truck (*Knight*) and a house (*Flenniken*), items which are encompassed in the definition of "goods" under the Act.

In summary, if the borrower's "objective" in borrowing the money is the purchase or lease of goods or services, he may be a consumer under the Act. *La Sara Grain,* 673 S.W.2d at 567; *Irizarry v. Amarillo Pantex Fed. Credit Union,* 695 S.W.2d 91 (Tex.App.—Amarillo 1985, no writ); *Martin v. Lou Poliquin Enterprises, Inc.,* 696 S.W.2d 180 (Tex.App.—Houston [14th Dist.] 1985, writ refused n.r.e.). This is especially true where the lender and seller "were so inextricably intertwined in the transaction as to be equally responsible for the conduct of the sale." *Knight,* 627 S.W.2d at 389.

Both *Knight* and *Flenniken* were distinguished in *Wynn v. Kensington,* 697 S.W.2d 47 (Tex.App.—Austin 1985, no writ) because there was no evidence of any "tie-in" relationship between the manufacturer and the lender under the facts of *Wynn.* Wynn had purchased a mobile home which contained excessive levels of formaldehyde, and she filed suit against the lender, the manufacturer of the mobile home, the retail seller, and others based on product liability and deceptive trade practices. The Austin Court of Appeals held that without evidence of a "tie-in" relationship between the manufacturer and the lender, Wynn could not rely on *Knight* or *Flenniken* as a basis for proceeding against the lender.

In the present case, the appellees have established some evidence of a "tie-in" relationship between the builder of the house and the lender. Sales representatives for the builder recommended that the appellees use the appellant mortgage company, and they arranged an appointment for the appellees to file an application for the loan with the appellant. Further, the earnest money contract executed by the builder and the appellees provided for an inspection by the lending agency and also provided that after the final inspection by the lending agency, the builder's obligations would be complete.

We conclude that because there is some evidence of a "tie-in" relationship between the builder and the appellant, the trial court did not err in deciding that the appellees were "consumers" as to all parties who sought to enjoy the benefits of the sale.

We overrule appellant's second point of error.

■ In its third point of error, appellant claims that Special Issue No. 11 was not supported by the pleadings and should not have been submitted to the jury.

The complained of issue reads as follows:
Do you find from a preponderance of the evidence that Defendant Holland Mortgage Company represented that the Bone residence:
a) had characteristics which it did not have, or
b) was of a particular quality when it was not.
Answer "We do," or "We do not." (The jury answered "we do".)

The record reflects that the plaintiff's sixth amended petition contained the following:
15. By virtue of a written Earnest Money Contract dated February 2, 1979, between Bud Monroe Building Company and Plaintiffs herein, Holland Mortgage Company has the duty to inspect and approve the residence as having been contructed [sic] in accordance with good building practices. Defendant Holland Mortgage Company made representa-

tions and warranties that such residence had been constructed in accordance with good building practices which representations were false as said residence had not been constructed in accordance with good building practices, thereby breaching its warranty to plaintiffs. Defendant Holland Mortgage Company was also negligent in making such inspection and approval that the residence was constructed in accordance with good building practices, which negligence was a proximate cause of plaintiffs' damages, hereinafter mentioned.

16. Defendant Holland Mortgage Company has been guilty of an unconscionable course of action against plaintiffs by virtue of the allegations above and, in addition, because said defendants, acts and practices took advantage of the lack of knowledge, ability, experience, or capacity of plaintiffs to a grossly unfair degree and resulted in a gross disparity between the value received by plaintiffs and what was paid by plaintiffs in the transaction herein described.

Appellant contends that the pleadings do not support the submission of the special issue and the issue does not "restrict inquiry to representations made to the plaintiffs but allows the jury to speculate and guess that representations made to others may require an affirmative answer to Special Issue No. 11." However, we do not find that the pleading restricts the representations and warranties by Holland to the appellees as the appellant contends.

It is well settled that in an action brought under the DTPA, the plaintiffs do not have to plead the particular subdivisions of the Act upon which they relied. *Padre Island Inv. Corp. v. Sorbera,* 677 S.W.2d 90, 94 (Tex.App.—San Antonio 1984, writ dism'd); *U.S. Steel Corp. v. Fiberglass Specialties,* 638 S.W.2d 950, 955 (Tex.App.—Tyler 1982, no writ). In *Weitzel v. Barnes,* 691 S.W.2d 598 (Tex.1985), the Supreme Court held that the plaintiff's pleading was sufficient wherein it was alleged that the defendants had represented to them that equipment and systems in the home were within building specifications. If there was a pleading defect, appellant

could have properly attacked it by special exceptions.

With regard to the special issue submitted to the jury, we find that the form of the issue submitted was proper and was supported by the pleadings. Issues in a deceptive trade practice case for 17.46(b) violations should be submitted in terms as close as possible to those actually used in the statute. *Brown v. Am. Transfer & Storage Co.,* 601 S.W.2d 931 (Tex.1980), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980).

Tex.Bus. & Com.Code Ann. § 17.46(b)(5) and (7) (Vernon Supp.1986) provide that the following are deceptive acts or practices: "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not" and "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." The issue submitted in the instant case closely follows the wording of the statute with alterations or deletions to conform the issue to the pleadings and the evidence.

Tex.R.Civ.P. 277 gives the trial court discretion to submit issues broadly, and Tex. R.Civ.P. 279 authorizes the court to submit the controlling issues made by the written pleadings and the evidence. Furthermore, variance between pleadings and proof has rarely been the source of harmful error. *Brown v. Am. Transfer,* 601 S.W.2d at 937. To be reversible error, the variance must be substantial, misleading, constitute surprise, and be a prejudicial departure from the pleading. *Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183 (Tex.1977).

We find that special issue No. 11 was supported by the pleadings. The appellant's third point of error is overruled.

◼ The appellant's final three points of error are no evidence points. In its fourth point, the appellant asserts that there was no evidence to support the jury finding that the appellant represented that the resi-

dence had characteristics which it did not have or was of a particular quality when it was not. Its fifth point of error asserts there was no evidence that the appellant's actions in connection with the loan transaction were "unconscionable actions or courses of action." The appellant also asserts in its sixth point of error that there was no evidence that its actions were a producing cause of damage to the appellees.

No evidence points can only be sustained if the record discloses one of the following: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361, 362–363 (1960).

In considering these no evidence points, we must consider only the evidence tending to support the finding, giving effect to all reasonable inferences that may be drawn therefrom, and disregarding all conflicting evidence. *Glover v. Texas Gen. Idem. Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). When evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61 (Tex.1983). The test to be applied in the no evidence/scintilla evidence rule is that if reasonable minds cannot differ from the conclusion that the evidence offered to support the existence of a vital fact lacks probative force, it will be held to be the legal equivalency of no evidence; however, there is some evidence, more than a scintilla, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact. *Id.* at 63. We have reviewed the record to determine if the appellees' claims are supported by any evidence.

Regarding the appellant's fourth point, it is not controverted that the appellant made no specific oral or written representations to either of the appellees, nor made any inspection report to the appellees. However, appellees contend that appellant's inspection of the house and the subsequent loan disbursement constituted an implied representation that the house was built in accordance with good building practices and in a workmanlike manner. There is no evidence to show that the appellees were deceived or misled by an inspection prior to the time they purchased the house because they did not receive a copy of such inspection, or even know if the inspection ever took place.

The evidence establishes that the appellees selected the house and signed the earnest money contract before they contacted the appellant for a loan. The earnest money contract provided that "seller agrees to erect the house in accordance with good building practices, and final inspections and approval by the lending agency shall constitute complete performance by the seller of all of its obligations hereunder." The appellees testified that they read the earnest money contract and believed the lender would inspect the house although the inspection was never discussed with the appellant or the builder. The earnest money contract did not identify what type of inspection was to take place and the appellant was not named in the contract, nor a party to it.

Appellant's representative testified that the inspection was ordered for March 15, 1979, the same day as the closing on the house, and that it was a "walk-through" inspection for the benefit of the lender, in order to assure that the property was worth the loan amount. The undisputed evidence shows that the appellant requested a copy of the earnest money contract only in order to verify the sale price of the house, to insure that the loan was not for a larger amount, and to obtain a legal description of the property.

The appellees contend that because the inspection constituted complete performance by Monroe of all its obligations under

the earnest money contract, and because the appellant's representative testified that the inspection certified the property was being completed in a "workmanlike manner," appellant misrepresented the characteristics and quality of the house. However, the record clearly shows no representations were made by the appellant to the appellees, and we hold that no duty arises to disclose information of which appellant was unaware. *See Lone Star Ford, Inc. v. McGlashan,* 681 S.W.2d 720 (Tex.App.— Houston [1st Dist.] 1984, no writ). Appellees' testimony indicated that at the time of the inspection no sod was planted in the yard of the house. They also testified that it was only after the appellees purchased the house and planted sod, that the slab of the house fell below the natural grade. The appellees also testified that they were aware of the problem at the time of purchase, and knew the house was at or slightly above the natural grade.

We find no evidence that the appellant represented that the house had characteristics which it did not have, or was of a particular quality, when it was not.

■ The appellant also contends that there is no evidence that its actions in connection with the loan were "unconscionable" because no act or practice of the appellant resulted in a "gross disparity between the value received and the consideration paid." We agree.

Although the appellant's representative testified that an appraisal was performed in 1979 and there were "no problems" with this appraisal, no expert testimony was presented as to the value of the house in 1979 at the time of its purchase. The only expert testimony presented evidence as to the value of the house in 1982, 1984, and 1986. In *Chastain v. Koonce,* 700 S.W.2d 579 (Tex.1985), the Supreme Court held that the purchaser failed to show unconscionability under the gross disparity in value test under the DTPA where no expert testimony was presented as to the value of the property at the time of purchase. Even if we assume that the $6,000 damages found by the jury was the difference in 1979 between the value received

and the consideration paid, this is not a "gross disparity" as a matter of law because it constitutes less than 7% of the $86,900 consideration paid.

We sustain appellant's fourth and fifth points of error. Accordingly, we need not address the appellant's sixth point of error or the appellees' two crosspoints.

The judgment of the trial court against the appellant is reversed, and judgment is rendered that appellees take nothing against the appellant, Holland Mortgage and Investment Corporation. Costs in this Court and in the district court are assessed against appellees.