HAMRICK.467CV 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00467-CV







T. L. Hamrick, Connie Hamrick, Leslie Hamrick, Craig Barton, Jacque Barton, Jimmy
Barton and Kevin Copeland, Appellants


v.



Houston Livestock Show and Rodeo, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 92-14826-A, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING






PER CURIAM



 This is an appeal of a summary judgment rendered in favor of Houston Livestock
Show and Rodeo, Inc. The appellants, T. L. Hamrick, Connie Hamrick, Leslie Hamrick, Craig
Barton, Jacque Barton, Jimmy Barton and Kevin Copeland brought suit against the Houston
Livestock Show and Rodeo, Inc., (the "Houston Livestock Show"), alleging breach of contract,
conversion, negligence, gross negligence, libel, slander, defamation, intentional infliction of
emotional distress and violations of the Texas Deceptive Trade Practices Act (the "DTPA"). (1) The
trial court granted summary judgment for Houston Livestock Show. We will reverse the judgment
and remand the cause for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND 

 In 1990, FFA students, Leslie Hamrick, Jimmy Barton and Kevin Copeland applied
for entry into the 1991 Houston Livestock Show and auction as junior exhibitors. The application
required payment of a $25.00 entry fee and the signature of the parent or legal guardian of each
of the students on the application and accompanying statements acknowledging that the exhibitors
would abide by the rules of the show. The entry fees collected from the exhibitioners are used
to offset the operating expenses of the show. Entry into the competition entitled exhibitors of
prize winning steers, lambs, and barrows to be eligible for sale in their respective auctions. 
Ribbon-winning animals selling in the premium sales would be charged varying commissions by
the Houston Livestock Show. The Junior Market Entry Application provided that animals
participating in the show "may, at the discretion of the Houston Livestock Show & Rodeo
management, be tested for unauthorized use of medications or drugs." The application further
stated that the "[e]exhibitor agrees to abide by all Rules and Regulations of the Houston Livestock
Show." Rule 23 specifically provided that the Houston Livestock Show "reserves the right to
have blood or urine laboratorial analysis made on any animal entered from competition. An
exhibitor of an animal producing an analysis with a quantity of diuretic or any unapproved
medication will forfeit all rights and privileges to exhibit livestock in the future at the Houston
Livestock Show." 

 The three youths competed as junior exhibitors in the 1991 Houston Livestock
Show and each received an award in his or her respective area of competition. Immediately
following the judging of the livestock, urine samples were taken from the winning animals. The
collection procedures required that each of the junior exhibitors or one of their representatives
sign a collection form verifying that the sample was collected from the exhibitor's animal. The
samples were tested by the Texas Veterinary Medical Diagnostic Laboratory at Texas A & M
University in College Station, Texas. Hamrick's lamb, Barton's lamb and Copeland's steer all
tested positive for the presence of unapproved drugs and the junior exhibitors were disqualified. 
As a result of disqualification, they were asked to forfeit their auction proceeds and premiums and
were subjected to various other penalties. Barton and Copeland, however, were reinstated and
awarded sale auction and premium money after a second laboratory test performed by the College
of Veterinary Medicine at the University of Minnesota failed to confirm the presence of
unapproved drugs. Hamrick's lamb, however, again tested positive for an unapproved drug. 
Hamrick, Barton, their parents and later, Copeland, brought suit against the Houston Livestock
Show asserting breach of contract, conversion, civil conspiracy, tortious interference with
contract, negligence, gross negligence, libel, slander and defamation, intentional or reckless
infliction of emotional distress and deceptive trade practices. 

 The Houston Livestock Show filed a motion for summary judgment on all of
appellants' claims. The trial court granted summary judgment in favor of the Houston Livestock
Show on appellants' claims for conversion and intentional infliction of emotional distress, and on
appellants' DTPA claims on the ground that appellants were not "consumers" as defined by the
DTPA. Following rendition of the summary judgment, all parties agreed to severance of the
DTPA claims from the original suit. The agreed order severing the summary judgment and
abating the original cause was signed on June 16, 1995. Plaintiffs filed this appeal complaining
that the trial court erred in granting summary judgment with respect to their DTPA claims. 

ANALYSIS In a sole point of error, appellants urge that the trial court erred in granting
summary judgment as to their claims under the DTPA because fact issues exist in connection with
the appellants' claimed status as "consumers." A summary judgment for the defendant, disposing
of the entire case, is proper only if, as a matter of law, plaintiff could not succeed on any theories
alleged. Delgado v. Burns, 656 S.W.2d 428, 429 (Tex. 1983). The standards for reviewing
summary judgment are well established: (1) the movant for summary judgment has the burden of
showing that there is no genuine issue of material fact and that it is entitled to judgment as a
matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable
inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. Nixon
v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Once a defendant
negates an essential element of a plaintiff's claim, the burden shifts to the nonmovant to introduce
evidence that raises an issue of fact on that element. Casso v. Brand, 776 S.W.2d 551, 556 (Tex.
1989); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). However,
if a defendant conclusively negates one of the essential elements of the plaintiff's cause of action
as a matter of law, summary judgment is proper. Goldberg v. United States Shoe Corp., 775
S.W.2d 751, 752 (Tex. App.--Houston [1st Dist.] 1989, writ denied). The purpose of summary
judgment is to eliminate patently unmeritorious claims and defenses, not to deprive litigants of
their right to a full hearing on the merits of any real issue of fact. Gulbenkian v. Penn, 252
S.W.2d 929, 931 (Tex. 1952). 


 Appellants' claims of recovery under the DTPA hinge on whether their status as
exhibitors in the Houston Livestock Show qualifies them as consumers under the DTPA. The
DTPA mandates liberal construction to promote the underlying purpose of the statute. Tex. Bus.
& Com. Code Ann. § 17.44. A "consumer" under the DTPA is defined as "an individual,
partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires,
by purchase or lease, any goods or services . . ." Tex. Bus. & Com. Code § 17.45(4). The
purchase of services, in the context of the DTPA, has been defined as the actual transmission of
services from one person to another by voluntary act or agreement, founded on valuable
consideration. Hall v. Bean, 582 S.W.2d 263, 265 (Tex. Civ. App.--Beaumont 1979, no writ);
Tex. Bus. & Com. Code Ann. § 17.45(2). The purchase of goods or services must form the basis
of the complaint. Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 539 (Tex. 1981). 
Whether a plaintiff is a consumer under the DTPA is a question of law for the trial court. 
Holland Mortgage & Inv. Corp. v. Bone, 751 S.W.2d 515, 517 (Tex. App.--Houston [1st. Dist.]
1987, writ ref'd n.r.e.). 

 We find persuasive the recent decision of the 8th Court of Appeals in Galveston
Co. Fair & Rodeo v. Kauffman, 910 S.W.2d 129 (Tex. App.--El Paso 1995, writ requested). On
strikingly similar facts in Kauffman, the El Paso Court held that a contestant in a county fair
livestock competition was a "consumer" within the meaning of the DTPA. The Court reasoned
that where the contestant had paid an entry fee to participate in the contest, the fee constituted the
purchasing of services necessary to bring the contestant within the scope of the DTPA. Further,
the Court held that the commission charged by the county fair for auctioning off prize livestock
constituted an additional fee paid by contestants for the fair's auction services. Accordingly the
Court concluded such a contestant was a consumer for purposes of the DTPA. Id. at 137. 

 Here, appellants paid a required entry fee to participate in appellee's show and to
acquire appellee's services in connection with such participation. The gamut of services included
but was not limited to the provision of a forum for exhibiting, competing, judging, urine
collection and testing, determining winners, auctioning animals, and awarding of auction money.
The term "services" has been defined, in the DTPA context, as any "action or use that furthers
some end or purpose . . . conduct or performance that assists or benefits some end or purpose .
. . deeds useful or instrumental toward some object." Riverside Nat'l Bank v. Lewis, 603 S.W.2d
169, 174 (Tex. 1980); Fortner v. Fannin Bank, 634 S.W.2d 74,76 (Tex. App.--Austin 1982, no
writ); see First State Bank v. Keilman, 851 S.W.2d 914, 929 (Tex. App.--Austin 1993, writ
denied) (services purchased must be an objective of the transaction, not merely incidental to it). 
In the instant cause we conclude that the services provided incident to appellants' competition in
the show were of sufficient scope to provide appellants with consumer status under the DTPA.

 In response, the Houston Livestock Show asserts that appellants, as contestants in
the show, were not consumers under the DTPA. The Houston Livestock Show relies primarily
on the holding in Rutherford v. Whataburger, Inc., 601 S.W.2d 441 (Tex. Civ. App.--Dallas 1980,
writ ref'd n.r.e.). Rutherford concerned a free contest in which the plaintiff was a dissatisfied
winner of a promotional contest sponsored by Whataburger. According to the terms of the
contest, Whataburger offered reduced prices on food and agreed to award the winners of its
contest an automobile. Because the plaintiff sought only to win a free prize, the Dallas Court held
that he could not have sought to purchase it. Id. at 444. The holding in Whataburger may be
distinguished from the instant case where appellants paid to enter the contest, and therefore
"purchased" a chance to win a prize. Moreover, the ribbon-winning animals were auctioned for
sale and a portion of the sale proceeds were paid to the Houston Livestock Show in the form of
a commission. Following the reasoning in Kauffman, we conclude that appellants satisfy the
definition of "consumer" under the DTPA. See Tex. Bus. & Com. Code Ann. § 17.45(4).



CONCLUSION


 The judgment of the trial court is reversed and the cause is remanded for further
proceedings.


Before Justices Powers, Aboussie and Kidd

Reversed and Remanded

Filed: April 17, 1996

Do Not Publish 
1.   Tex. Bus. & Com. Code Ann. § 17.44 (West 1987).