

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00379-CV

**VERNIE CALDWELL MARSHALL II
AND MARSHA MARSHALL,**

                                                                **Appellants**

 **v.**

**ENTERPRISE BANK, HERMAN DUHR, JR.,
AND JAMES HUDSON, INDIVIDUALLY,**

                                                                **Appellees**

**From the 82nd District Court
Falls County, Texas
Trial Court No. 39367-CV**

## MEMORANDUM OPINION

In six issues, appellants, Vernie Caldwell Marshall II and Marsha Marshall, challenge the trial court's granting of a motion to dismiss filed pursuant to Texas Rule of Civil Procedure 91a by appellees, Enterprise Bank, Herman Duhr, Jr. and James Hudson. *See* TEX. R. CIV. P. 91a. By cross-appeal, appellees contend that the trial court abused its discretion by failing to award appellees their reasonable and necessary attorney's fees

after granting their Rule 91a motion to dismiss. Because we affirm the trial court's order granting appellees' Rule 91a motion to dismiss but reverse the portion of the order denying appellees their attorney's fees, we affirm, in part, and reverse and remand, in part.[1]

## I.     BACKGROUND

In 1985, appellants purchased property in Falls County, Texas, to start their own stocker-cattle operation. To finance the business, Vernie took out numerous loans from Enterprise Bank beginning in 2002. In or around 2006, to protect itself against a prior default by Vernie, the Bank advised Vernie that it would not extend him any additional loans unless the loans were guaranteed by a third party.

Thereafter, the Bank discovered a program sponsored by the Farm Services Agency ('FSA"), which is part of the United States Department of Agriculture. Under the FSA's program, a portion of the bank's loan for certain agricultural purposes would be guaranteed.[2] To obtain the FSA guarantee, the Bank became a certified FSA lender.

On September 25, 2006, Vernie signed an FSA application to guarantee a potential $400,000 loan with the Bank to fund his stocker-cattle operations and related expenses. The FSA approved a guarantee for the Bank for this loan. Thus, on January 31, 2017, the

---

[1] In light of our disposition, we dismiss all pending motions as moot.

[2] Under the FSA program, in exchange for the lender performing certain services to protect the FSA, the FSA agrees to guarantee payment and reimburse a lender for up to 95% of any losses between the lending financial institution and its borrower for a qualifying agricultural loan, such as one for stocker-cattle operations. The FSA guarantee agreement protects the financial institution, not the borrower.

Bank loaned Vernie $400,000 under a five-year renewable line of credit. And although he repaid the 2007 loan, Vernie required additional funds to cover a $127,000 operating loss in 2007. As such, Vernie requested additional sums in 2008.

On March 7, 2008, Vernie renewed the 2007 loan with the Bank for the sum of $400,000. This sum was once again guaranteed by the FSA. Proceeds from the 2008 renewal were used to pay the $127,000 operating-loss debt, as well as fund an additional $227,000 purchase of cattle stockers in March 2008. And, as mentioned in appellants' live pleading, the Bank advanced additional funds under the 2008 renewal, and that the loan's $400,000 credit limit was "maxed out in early 2008."

In July 2009, the Bank declared the 2008 renewal in default in the sum of $183,909.60. However, Vernie was able to obtain a new $875,000, five-year renewable loan for additional operating and living expenses. The funding of this new loan was "conditioned" on the agreed restructuring and payment of the $183,909.60 default amount. This new loan was also covered by a guarantee agreement between the FSA and the Bank, which provided that one of the purposes of the funds from the loan was to restructure $198,000 of prior loans, providing for payment of the sum over seven years.

When the Bank refused to renew the $875,000 loan due to the non-payment of principal in the annual payment of the restructured loan balance, appellants filed suit, asserting causes of action under the Texas Deceptive Trade Practices Act ("DTPA"), fraud by misrepresentation, fraud by non-disclosure, and negligent undertaking. In response,

appellees filed an original answer denying appellants' allegations, an original counterclaim for breach of contract, and later a motion to dismiss under Rule 91a of the Texas Rules of Civil Procedure. In their motion to dismiss, appellees alleged that appellants' DTPA, fraud, and negligent undertaking causes of action fail as a matter of law and must be dismissed in their entirety. With regard to appellants' DTPA claims, in particular, appellees asserted that appellants were not "consumers" who purchased or leased goods or services under the DTPA; and appellants' claims were exempt under the DTPA because they form a series of transactions over $500,000. Appellees also argued that they did not make any misrepresentations to appellants; that appellants failed to plead facts showing appellees had a duty to disclose certain information to appellants; and that appellees did not undertake any duty for appellants' benefit. Rather, any duty under the guarantee agreements were solely for the Bank's benefit to protect its ability to collect in the event of a default by Vernie.

After a hearing, the trial court granted appellees' Rule 91a motion to dismiss, but denied appellees' request for attorney's fees. On August 16, 2016, the trial court signed a final judgment reflecting the granting of appellees' Rule 91a motion to dismiss, as well as the dismissal of appellees' original counterclaim with prejudice. Thereafter, appellants filed their notice of appeal, and appellees filed a notice of cross-appeal.

## II. STANDARD OF REVIEW

Texas Rule of Civil Procedure 91a allows a party, with exceptions not applicable here, to "move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* We review the merits of a Rule 91a motion de novo, because the availability of a remedy under the facts is a question of law. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724-25 (Tex. 2016) (per curiam) (citing *Wooley v. Schaffer*, 447 S.W.3d 71, 75-76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)).

## III. ANALYSIS

### A. Time for Motion and Ruling

In their first issue, appellants argue that the trial court's order granting appellees' motion to dismiss is void and unenforceable because it was not signed within forty-five days after the motion was filed. *See* TEX. R. CIV. P. 91a.3. In response, appellees concede that the trial court did not sign the order granting their motion to dismiss within forty-five days of its filing[3]; however, appellees argue that appellants cannot show any prejudice from the trial court's delayed ruling.

---

[3] We note that the movant (here, appellees), whom Rule 91a was intended to benefit by the creation of an early-dismissal procedure, is ordinarily the party heard to complain about a trial court's non-compliance with a deadline under the rule.

Rule 91a, which became effective March 1, 2013, instructs that a motion to dismiss filed under this rule "must" be granted or denied within forty-five days of filing. *See id.* at R. 91a.3(c). The usage of the word "must" connotes a mandatory duty or obligation. *See Helena Chem Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001); *see also Walker v. Owens*, 492 S.W.3d 787, 790 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Here, the record demonstrates that the trial court did not comply with the forty-five day deadline, and its failure to do so was error. *See Walker*, 492 S.W.3d at 790. However, Rule 91a does not contain a sanction for non-compliance with the forty-five day deadline. *See id.* Indeed, several of our sister courts have recognized this. *See Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 602 (Tex. App.—Corpus Christi 2017, no pet.) ("First, the Legislature prescribed no 'consequences for noncompliance' with the requirement to rule on the 91a motion with 45 days." (citing TEX. R. CIV. P. 91a.3(c); *Helena Chem. Co.*, 47 S.W.3d at 495)); *Koenig v. Blaylock*, 497 S.W.3d 595, 598 (Tex. App.—Austin 2016, no pet.) ("While it is true that Rule 91a.3 provides that a motion to dismiss 'must be . . . granted or denied within 45 days after the motion is filed,' the Rule does not provide any consequences if a court takes no action on the motion within the prescribed period."); *Walker*, 492 S.W.3d at 790-91 ("Rule 91a, however, does not contain any sanction for non-compliance with the forty-five day deadline, and we have not identified any Texas authority addressing the effect of a trial court's failure to comply.").

Nevertheless, "the court's non-compliance with the mandatory language of the rule will not result in reversal if the error is found to be harmless." *Walker*, 492 S.W.3d at 791 (citing *Lorusso v. Members Mut. Ins. Co.*, 603 S.W.2d 818, 820 (Tex. 1980); *C.E. Duke's Wrecker Serv., Inc. v. Oakley*, 526 S.W.2d 228, 233 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.)). On appeal, appellants do not identify any prejudice suffered as a result of the trial court's failure to rule on appellees' Rule 91a motion to dismiss within forty-five days. Furthermore, the record reflects that the parties did not engage in any discovery or further the litigation process between the hearing date for the motion to dismiss and the date the order was eventually signed. Accordingly, we conclude that the trial court's failure to rule on appellees' Rule 91a motion to dismiss within forty-five days, while error, was not harmful to appellants. *See Walker*, 492 S.W.3d at 791. We therefore overrule appellants' first issue.

**B.      Were Appellants Consumers under the DTPA?**

In their second issue, appellants argue that the trial court erred in granting the motion to dismiss because the pleadings establish that they are consumers under the DTPA, and thus, their DTPA claim is not baseless in law. In particular, appellants claim consumer status under the DTPA, asserting that they sought "loan servicing" from appellees.

"To meet the DTPA's standing requirement, a complaining party must plead and prove that he or she is a 'consumer' under the Act." *Jones v. Star Houston, Inc.*, 45 S.W.3d

350, 356 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (citing *Farmers & Merchants State Bank of Krum v. Ferguson*, 617 S.W.2d 918, 919 (Tex. 1981)). "To establish DTPA consumer status, a complaining party must show that (1) it 'has sought or acquired goods or services by purchase or lease,' and (2) 'the goods and services in question must form the basis of the plaintiff's complaint.'" *Id.* (quoting *Thompson v. Deloitte & Touche, L.L.P.*, 902 S.W.2d 13, 19 (Tex. App.—Houston [1st Dist.] 1995, no writ)). Whether one is a consumer under the DTPA is a question of law. *Reule v. M&T Mortg.*, 483 S.W.3d 600, 614 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing *Holland Mortg. & Inv. Corp. v. Bone*, 751 S.W.2d 515, 517 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.)).

Generally, "where the underlying transaction is a loan, consumer status is not conferred because money is neither a good or service." *Id.* (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173-74 (Tex. 1980)). Here, the evidence demonstrates that appellants sought loans of money from the Bank to support their stocker-cattle operations—general inventory—and not for any specific goods or services from the bank.

In an analogous case, Central Texas Hardware sought a loan from a bank—First City Texas-Bryan, N.A.—and a separate agreement from the Small Business Administration ("SBA"). *Cent. Tex. Hardware, Inc. v. First City Tex.-Bryan, N.A.*, 810 S.W.2d 234, 236 (Tex. App.—Houston [14th Dist.] 1991, writ denied). Central Texas Hardware asserted claims under the DTPA against First City, alleging that because First City did not secure the SBA guarantee agreement as promised, Central Texas Hardware

was unable to obtain inventory and was forced to close its business. *Id.* On appeal, the Fourteenth Court of Appeals held that Central Texas Hardware was not a consumer under the DTPA because the loan proceeds sought were to purchase general inventory instead of a specific good, and that "[t]o the extent that appellants complain about the bank's negotiations with the SBA, these 'services,' for which no fee was charged, were merely ancillary to the processing of the loan application itself and thus not 'services' under the DTPA." *Id.* at 236-27.

Despite the foregoing, appellants cite a litany of cases that we do not find persuasive. In particular, appellants rely on one case more heavily than the others—*Scott v. Commercial Services of Perry, Inc.*, 121 S.W.3d 26 (Tex. App.—Tyler 2003, no pet.). However, like before, we are not persuaded by appellants' reliance on *Scott*. Specifically, the plaintiff in *Scott* did not allege a DTPA violation, but rather, argued that, among other things, the bank breached a loan-servicing agreement. *Id.* at 28. The Tyler Court of Appeals concluded that the trial court erroneously granted summary judgment for the bank on Scott's breach of the loan-servicing agreement claim because the bank did not "negate at least one element of the cause of action for breach of its duty to service the loan, nor did it assert any defense thereto." *Id.* at 31. The *Scott* Court did not address the DTPA, much less consumer status under the DTPA. Therefore, we do not find the *Scott* case to be persuasive in our analysis of appellants' assertion that they are consumers under the DTPA. Accordingly, based on the foregoing, we cannot say that appellants

were consumers within the ambit of the DTPA. As such, we overrule appellants' second issue.

## C. Did Appellants' Claims Exceed the $500,000 DTPA Threshold?

In their third issue, appellants assert that the trial court erred in granting the motion to dismiss on the grounds that the loan transactions, which serve as the basis of appellants' DTPA claim, involve monies in excess of $500,000 and that any such claim is exempt under the DTPA. At the outset, we emphasize that our resolution of the DTPA-consumer-status issue against appellants renders this issue immaterial. *See* TEX. R. APP. P. 47.1, 47.4. In other words, because appellants were not consumers under the DTPA with regard to the loan transactions, the monetary threshold of the DTPA is irrelevant to this matter. *See* TEX. BUS. & COM. CODE ANN. § 17.49(g) (West Supp. 2017) ("Nothing in this subchapter shall apply to a cause of action arising from a transaction . . . involving total consideration by the *consumer* of more than $500,000, other than a cause of action involving a consumer's residence." (emphasis added)); *see also Henry v. Cullum Cos.*, 891 S.W.2d 789, 794 (Tex. App.—Amarillo 1995, writ denied) ("In order to recover under the DTPA, a plaintiff must initially establish that he or she qualifies as a 'consumer' as defined by the statute. The threshold question of whether or not a plaintiff is a consumer is a question of law to be determined by the trial court. Failure to qualify as a consumer under the DTPA will defeat a plaintiff's claim in that regard." (internal citations omitted)). Accordingly, we overrule appellant's third issue.

**D.      Purported Misrepresentations Made by Appellees to Appellants**

In their fourth issue, appellants complain that the trial court erred in granting the motion to dismiss because appellees made material misrepresentations regarding the loan transactions. Specifically, on appeal, appellants claim that:

> In the meeting in Appellee Hudson's office toward the end of 2007, Appellee Hudson told Appellant VCM that the loan balance was $127,000, that they were requiring the entire pre-existing non-guaranteed term loan to be paid (instead of the $53,000 annual payment the bank had told the FSA the bank would accept (in order to obtain the guarantee loan approval)[)].

However, this contention was not made in appellant's live pleading and cannot serve as the basis for error on appeal. *See In re E.M.*, 494 S.W.3d 209, 229 (Tex. App.—Waco 2015, pet. denied) ("In order to preserve error for appellate review, a party's argument on appeal must comport with its argument in the trial court." (citing *In re D.E.H.*, 301 S.W.3d 825, 829 (Tex. App.—Fort Worth 2009, pet. denied))).

In any event, in their live pleading, appellants claim that Hudson filed a false written statement with the FSA in February 2008 that the $400,000 loan had been fully paid; represented to the FSA that the reason for the loan extension was for more time to fatten stockers; and "did not advise the FSA that the bank had paid the $127,000 first year loss claimed by the bank by carrying the loss forward and charging it to the second year loan." None of these purported misrepresentations were made directly to appellants by appellees or indirectly with the intent that it be made to a third party and relied upon by appellants. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011)

(stating that in order to prevail on a fraud claim, a plaintiff must, among other things, allege that the defendant made a misrepresentation either directly to the plaintiff or indirectly to a third party knowing that the plaintiff would receive and rely on the representation); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001) (same); *see also Scott*, 121 S.W.3d at 30 (concluding that the borrowers received the loans they applied for and any misrepresentation was between the bank and the FSA; as such, the borrowers could not assert a fraud cause of action."). Moreover, appellants admit in their live pleading that they fully knew of the $127,000 deficiency that formed the basis of their fraud claim, which undermines the justifiable-reliance element of appellants' fraud cause of action. *See Exxon Corp.*, 348 S.W.3d at 217. Therefore, based on the foregoing, we overrule appellants' fourth issue.

## E.    Duties Owed by Appellees to Appellants

In their fifth and sixth issues, appellants complain that the trial court erred in granting the motion to dismiss because appellees purportedly engaged in fraud by nondisclosure, and because appellees' actions were negligent. However, in making these arguments, appellants do not cite any authority in support of their contentions, nor do they include citations to the record. Accordingly, we conclude that these two issues are inadequately briefed. *See* TEX. R. APP. P. 38.1(i). We overrule appellant's fifth and sixth issues.

**F.     Appellees' Request for Attorney's Fees**

In their sole issue on cross-appeal, appellees argue that the trial court abused its discretion by failing to award reasonable and necessary attorney's fees after granting their Rule 91a motion to dismiss. We agree.

An appellate court reviews a trial court's decision on the award of attorney's fees for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). "Whether to award attorney's fees, and to which party, is a decision that is solely within the trial court's discretion and will not be reversed absent a clear abuse of that discretion." *Sammons v. Elder*, 940 S.W.2d 276, 284 (Tex. App.—Waco 1997, writ denied). "The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but 'whether the court acted without reference to any guiding rules and principles.'" *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)).

Texas Rule of Civil Procedure 91a.7 provides that, with exceptions not applicable here, "the court must award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court. The court must consider evidence regarding costs and fees in determining the award." Tex. R. Civ. P. 91a.7. As we noted earlier, the usage of the word "must" connotes a mandatory duty or obligation. *See Helena Chem. Co.*, 47 S.W.3d at 493; *see also Walker*,

492 S.W.3d at 790.  Indeed, other Texas courts have concluded that Rule 91a.7 mandates an award of attorney's fees to a prevailing party, and the award is not discretionary.  *See Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 187 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("Undisputedly, the rule mandates an award of attorney's fees to a prevailing party, and the award is not discretionary."); *In re Butt*, 495 S.W.3d 455, 467 (Tex. App.—Corpus Christi 2016, orig. proceeding); *see also Drake v. Chase Bank*, No. 02-13-00340-CV, 2014 Tex. App. LEXIS 12572, at *5 (Tex. App.—Fort Worth Nov. 20, 2014, no pet.) (mem. op.).

Here, the record reflects that the trial court granted appellees' Rule 91a motion to dismiss, but declined to award appellees their attorney's fees.  Because appellees are the prevailing party, and because Rule 91a.7 mandates an award of attorney's fees to the prevailing party, we reverse the portion of the trial court's judgment denying appellees their attorney's fees and remand this proceeding for a hearing to determine and award appellees their reasonable and necessary attorney's fees under Rule 91a.7.  *See* TEX. R. CIV. P. 91a.7; *Koenig*, 497 S.W.3d at 601 (remanding a case to the trial court for a determination of the amount of reasonable and necessary attorney's fees and costs to be awarded under Rule 91a.7).  Accordingly, we sustain appellees' sole issue on cross-appeal.

## IV.  CONCLUSION

Based on the foregoing, we affirm the portion of the trial court's order granting appellees' Rule 91a motion to dismiss; however, we reverse the portion of the order

denying appellees their reasonable and necessary attorney's fees and remand for proceedings consistent with this opinion.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed, in part, reversed and remanded, in part
Opinion delivered and filed September 5, 2018
[CV06]

